## WAGSTAFF *a*. LOWERRE.

*Supreme Court, First District; Special Term, October,* 1856.

EXECUTOR.—TRUSTEE.—COMPUTATION OF COMMISSIONS.—REAL ESTATE.

Of the English rule, and former rule in this State, that trusts were honorary, and that a trustee as such had no claim to compensation.

Of the rules upon this subject now adopted in this and other States.

In this State, a trustee is now, as a general rule, and in the absence of any agreement upon the subject, to be allowed upon the settlement of his accounts, commissions at the rates awarded by statute to executors and administrators.

A trustee is not limited however to commissions upon that part of the estate which has become personal property.

In allowing and computing commissions to a trustee of real and personal estate, the proper basis of allowance, is the amount of property held in trust; without distinction as to the nature of the property.

This was a partition suit brought by Alfred Wagstaff and Sarah P. his wife against William Lowerre and twenty-five others. The complaint sought a partition of the real and personal estate whereof one David Wagstaff, deceased, died seized; and a settlement of plaintiff's accounts as executor and trustee.

David Wagstaff died September 28, 1828; leaving a will by which he provided that no division of his estate should take place until one year after the death of his wife; at which time it was to be divided between certain devisees named in the will. The plaintiff was the acting executor under the will. Many of the devises were made to him in trust for the intended beneficiaries. He was also a devisee named in the will. The widow of testator died March 15, 1854, so that according to the terms of the will the division was to be made March 15, 1855. During the period between 1828 and 1856, the estate had been under the charge of plaintiff, and the accumulations of rents and profits, over and above payments of legacies, charges, &c., amounted to upwards of two hundred thousand dollars.

There was the usual reference to take proofs for the infor-

mation of the court; and upon the hearing before the referee, the plaintiff claimed that as trustee, he was entitled to commissions upon the real as well as the personal estate, and upon the receipts and payments made by him. He contended that on a transfer of the estate out of his hands he was entitled to his commissions as trustee upon the value of the whole estate, and not on a part only. The referee however considered that the plaintiff was only entitled to commissions upon the sums received and the sums paid out by him, exclusive of such as were repaid to him and reinvested; and allowed commissions, by his report, accordingly. ·

· A motion was now made to confirm the report. On the part of the plaintiff the objection was raised that he was entitled to commissions as claimed before the referee. On the part of other parties other objections were urged; but we give only so much of the opinion as relates to the question of commissions.

*B. D. Silliman*, for plaintiff.

*William Lowerre*, for himself and wife.

*J. Coit*, for infant defendants.

*John Anthon* and *B. F. Dunning*, for other defendants.

DAVIES, J.—after disposing of other objections to the report. The only remaining question to be disposed of is that of the claim of the plaintiff to commissions upon the real estate of which he has had the care and management for nearly thirty years. In his hands, and under his watchful superintendence, and by his skill and good judgment, it has been preserved and protected, until it has become an estate of great magnitude, and giving to each heir a large fortune. The claim of the executor commends itself as just and reasonable, and if it is sustained by principle and authority, ought to be allowed.

The English Court of Chancery did and does not allow compensation to trustees, executors, &c., unless the same is given expressly, or by implication, by the deed or will creating the trust. (*Lewin on Trusts*, 438).

The same rule obtained in this State until the passage in

1817 of the act giving commissions to executors and adminis-trators. (*Laws of* 1817, 292.)

This act authorized the chancellor in settlement of the accounts of guardians, executors and administrators, to make a reasonable allowance to them for their services as such, over and above their expenses, and such rate, when settled by him, was to be conformed to, in all cases.

In compliance with this statute, the chancellor, on October 15, 1817, made an order that the compensation to guardians, executors and administrators should be, for receiving and pay-ing out money on all sums not exceeding one thousand dollars, five per cent., two and a half per cent. on all sums exceeding one thousand and not exceeding five thousand dollars, and on all sums above five thousand dollars, one per cent. (3 *Johns. Ch. R.*, 630).

The English rule was discussed and adhered to by Chancel-lor Kent in Green *a.* Winter, (1 *Johns. Ch. R.*, 37). The chancellor there allowed the trustee four dollars a-day "for his time and expenses" on the ground of a fair indemnity, but adhered inflexibly to the English rule not to allow a compen-sation to trustees for their services. He cites, with approval, the remark of Lord Hardwicke, in Aycliffe *v.* Murray, (2 *Atk.* 58), "that Chancery looked upon trusts as honorary and a burden upon the honor and conscience of the trustee, and *not* undertaken upon mercenary motives, though a fair and open bargain with the *cestui que trust*, for compensation, would be admissible."

The doctrine of this case is reaffirmed in Manning *v.* Man-ning, (1 *Johns. Ch. R.*, 527). In the latter case, Chancellor Kent enters upon a very elaborate discussion of the principles and reasons applicable to such allowances, and a review of all the authorities relating to the subject. He arrives at the con-clusion, both upon principle and authority, that no allowance for compensation could be made. This decision was in Sep-tember, 1815.

After the act of 1817, Chancellor Kent held, that a commit-tee of a lunatic came within the equity of that act, and allowed to him commissions according to it, and the rate thus fixed by the Chancellor was, a few days after, adopted as the compen-

sation for guardians, executors and administrators. (In matter of Roberts, a lunatic, 3 *Johns. Ch. R.*, 43.)

The question as to compensation to trustees, generally, does not appear to have been judicially passed upon in this State until 1832, when Chancellor Walworth, in Van Rensselaer *v.* Bayard, and Denniston *v.* Bleecker, (not reported, but referred to by him in Meacham *v.* Stearns, 9 *Paige*, 398), was of the opinion that compensation, similar to that allowed to executors, &c., should in all cases be allowed to trustees. In the latter case he held, that such compensation was proper to be paid to trustees for their services; and such has ever since been regarded as the well settled law of this State.

In other States it is now held, that trustees are entitled to such compensation as within the equity of their statutes giving compensation to executors, or because they do not regard the English rule withholding compensation as just and equitable. (Granberry *v.* Granberry, 1 *Wash. Virg. R.*, 250; Miller *v.* Beverleys, 4 *Hen. & Munf. R.*, 415; Prevost *v.* Gratz, 3 *Wash. C. C. R.*, 434; Kendall *v.* Newburg Co., 13 *Cowen's R.*, 383; Ringold *v.* Ringold, 1 *Har. & Gill*, 11; Winder *v.* Deffendafer, 1 *Bland*, 166; Boyd *v.* Hawkins, 2 *Dev. Ch. R.*, 195; Cheraz *v.* Wendell, *Walk. Ch. R.* 267).

The rate of compensation is not uniform in the different States;—it is fixed according to the circumstances of each case, the amount of the trust, and the nature and the value of the services.

In the case of Meacham *v.* Stearns, Chancellor Walworth applied the rule of the statute in cases of executors and administrators.

He says:—"It may, therefore, be considered the settled rule, so far as the decisions of this court can settle it, that *in all cases* of trusts of this description, and all other express trusts of a similar nature, when nothing is said in the deed or instrument creating the trust, on the subject of compensation to the trustee for his personal services in the execution of the trust, and where there is no agreement on the subject for a different allowance, that the trustee upon the settlement of his accounts, will be allowed the same fixed compensation for his services, by way of commissions, as are allowed by law to

executors and guardians, and to be computed in the same manner."

In that case the chancellor allowed commissions to the assignee, upon funds which in fact he had not collected, but with which he was charged; and also commissions upon debts due from the assignors to himself, and which he had applied in satisfaction of a debt due to him; and also commissions upon the balance found due by him and which by the decree, he was directed to pay over.

It seems to have been supposed by the referee, that the trustee in this case is limited to his commissions on that part of the estate, which had become personal property; and this, doubtless, has arisen from assuming such to be the intent of the statute, in the case of executors and administrators.

The statute alludes to personal estate, simply, because that is all executors and administrators have in charge.

In reference to them the statute allows commissions " on all sums of money" that they may receive and pay out. (2 *Rev. Stats.*, 93.) But commissions on the whole amount of the trust estate in their hands, under their control and managed by them, were intended, and have been uniformly allowed, even though a very small part was in money actually received or paid out. If the estate of the deceased consisted of stocks or bonds and mortgages, it might be and often is the case, that the executor actually receives and pays out only the interest or income, yet he would be entitled to and does receive his commission upon the whole amount of the estate.

The compensation is given to him for his care and management of the estate, and not for the simple act of receiving and paying out. And I am unable to see why the trustee, in this case, should be restricted to his commissions upon the sums of money he received and paid out, and the personal property which he transfers.

The reasons for his compensation apply, in my judgment, with greater force, even, in regard to real estate than personal.

The responsibility and difficulty of managing a trust estate consisting of stocks and bonds and mortgages, are far less than

that consisting like the present, of unproductive real estate, lying in the suburbs of a large and growing city.

This property has been subject to the system prevailing here, of local improvements, by opening streets and avenues, regulating and paving streets, constructing sewers, and other like operations.  It has also been subject to annual taxation, and constant watchfulness is required to save property thus circumstanced, from total loss and confiscation.

That attention seems to have been given to this estate by the present trustee, and I can see no justice in requiring him to have rendered these services gratuitously, for a period of nearly thirty years.  If any of this estate had been lost through his inattention and negligence, he would have been charged therewith.  Can anything be more equitable than that he should receive a compensation for services faithfully rendered in its preservation ?

No faithful and competent agent could have been hired to have rendered the service performed by this trustee, for the amount allowed, on the rate paid to executors, &c.

In matter of De Peyster, (4 *Sand. Ch. R.*, 511),  Vice Chancellor Sandford held, that, " as to houses and lots, the argument is strong, that they fall within the equity of the statute, and that there is no well-grounded distinction between lands and stocks as to the trustee's compensation."

In McWhater *v.* Baum, (*Hopk. R.* 42),  Chancellor Sandford says " The amount of property confided to " an executor, administrator, or guardian, *and passing through* his hands, is a basis upon which his reward may be easily computed.   The custody and care of the estate are his duty, and his services in general have a just proportion to the amount of the estate.   Though the value of his services may not be in exact proportion to the value of the estate, yet in the general course of these affairs, *the amount of the estate*, indicates with sufficient exactness, the extent of his labors, cares and services, and their reasonable value.   Thus a plain rate of calculation is afforded, *by the amount of the property* held in trust, a rule which is comprehensive as well as simple, and which is in all ordinary cases a very just criterion of the reasonable value of the services of the trustee.   This rule is

recommended by its absolute certainty, its intrinsic propriety, its adoption in other States in which compensation is allowed to these trustees, its analogy to the compensation made to other trustees and agents who have the care of property, and by the justice which it will generally afford to an executor, administrator, or guardian.

I must therefore regard "*the amount of property held in trust*" as the proper basis of allowance to the trustee, and "that there is no well-grounded distinction between lands and stocks, as to the trustee's compensation."

---

### EATON *a.* ASPINWALL.

*New York Superior Court; General Term, November,* 1856.

CORPORATIONS. — FILING OF CERTIFICATE. — STOCKHOLDERS' DEFENCES.

What is a sufficient filing of the certificate in writing required by the act of April 12, 1852, (*Laws,* 302, *ch.* 228), for the incorporation of an ocean steamship company.

It is settled in this State, that in an action by a corporation against a stockholder who has acted as a director, or a party who has incurred a debt to the corporation, as such, the defendant cannot set up as a defence any irregularity in the proceedings of incorporation which might show that the corporation never existed nor any fact amounting to a forfeiture.

The same principle must control, in an action brought by a creditor against a party who has held himself out as a member of a corporation, to enforce a personal liability of such party for debts of the corporation.

In such action, defendant cannot show that the corporation was not legally incorporated.

Of the extent of the personal liability in such cases.

Appeal from a judgment in favor of plaintiffs, entered upon the report of a referee.

This action was brought by Orsamus Eaton, Uri Gilbert and Edward O. Eaton, against William H. Aspinwall.

The cause having been at issue upon the complaint and answer, an order of reference was made to a referee to hear and determine the whole action.