CATHARINE HANCOX, Appellant and Respondent, v. SAMUEL M. MEEKER, as Surviving Executor, etc., Appellant and Respondent.

The will of W. gave his estate to his executors in trust, to pay certain specified annuities to his wife and his daughter C., to allow the former the occupancy of his homestead during life, to pay taxes on his real estate and keep the same in repair, and after providing for the above the executors were directed to divide the residue of the estate into eight equal parts, to invest the same separately in specified securities, and to apply the income of each part to the use of a beneficiary named, during life, etc.  Then followed in the same clause this provision: " I do hereby authorize and empower my said executors to let or lease my real estate * * * and after the decease of my wife to sell and convey the same for such prices and upon such terms as they may deem best for the interest of my estate."  Upon an accounting of the surviving executor, *held*, that this provision was not limited to the real estate directed to be appropriated to the benefit of the widow and daughter, but applied to all the testator's real estate, and taking the whole clause together it did not require the executors to sell the real estate before the death of the widow, but the question was left to their discretion and judgment; and, therefore, that they were not chargeable with a violation of duty for a failure to sell before such death.

Also *held*, that the executors were not required to sell immediately upon the death of the widow; but in the exercise of a sound discretion were authorized to hold the real estate until they could effect a sale for a price and upon terms fair and adequate and " best for the interests of the estate;" and, in the absence of evidence showing that delay in sell-

ing had been unreasonable, or that they had refused a fair offer for any portion of the property, or at least that the estate has sustained injury by the delay, that they were not chargeable with misconduct because of a failure to sell, and so were not liable for expenditures incurred by reason of the delay.

Among the items of expenditures for repairs was one for plate-glass ; *held* that, in the absence of evidence, it could not be decided that the use of plate-glass was unnecessary as a matter of ordinary repairs ; and that the item was properly allowed.

The decree upon the accounting directed the executor to pay to the auditor and referee, appointed to take and state the account, the sum of $1,000. It did not appear how many days were occupied by the referee, or whether any rate of compensation was stipulated for.   *Held*, that the question as to the propriety of the allowance was not presented on appeal.

*It seems* that, to present the question, the contestant should have raised it by motion before the judge taking the accounting upon papers, showing that the allowance was excessive and unlawful.

The executors and trustees annually, after the testator's death, upon the anniversary thereof, paid the annuities given by the will, and after deducting commissions on the income paid over the net proceeds to the residuary legatees, taking receipts.   It was objected that they were not entitled to their commissions until an accounting, and that the retention thereof was unlawful.   *Held* untenable.

As to whether after such a voluntary accounting and settlement between the parties the right to the commissions retained could be afterward questioned, *quære*.

*Valentine* v. *Valentine* (2 Barb. Ch. 430), *Drake* v. *Price* (5 N. Y. 430), *Betts* v. *Betts* (4 Abb. N. C. 317), *Morgan* v. *Hannas* (13 Abb. [N. S.] 361), distinguished.

*Cram* v. *Cram* (2 Redf. 246), *Tucker* v. *McDermott* (id. 321), questioned and distinguished.

(Argued March 19, 1884; decided April 15, 1884.)

THESE are cross appeals from different portions of a judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made May 17, 1883, which modified, and affirmed as modified, a decree of the chief judge of the Court of Common Pleas in and for the city and county of New York, acting as surrogate of said county, because of incapacity of the surrogate to act in the case, which decree was made upon the accounting of Samuel M. Meeker as sole surviving executor of the will of William Wall, deceased.

The provisions of the said will so far as material to the controversy are as follows:

"I give, devise and bequeath unto my executors, hereinafter named, all my estate, real and personal, of every kind and nature, and wherever situate, to have and to hold the same unto them, and the survivors and last survivor of them forever. Upon trust, however, and for the following uses and purposes, namely:

In the first place to pay all my just debts and funeral expenses.

*Secondly.* To pay my beloved wife Eliza, therefrom, a clear annual income of $12,000 during her natural life, in semi-annual installments, and permit and allow her the sole use, occupancy and enjoyment of my homestead property on Fifth avenue, in the city of New York, during her life, free of rent, taxes, assessments, and all other charges.

*Thirdly.* To pay to my daughter, Celia, a clear annual income of $1,400 during the life of my wife, or until my said daughter shall marry; such income to commence from my decease, to be paid to my said daughter semi-annually, and to terminate either at the death of my wife or the marriage of my said daughter, whichever event may first occur.

*Fifthly.* To pay all taxes, assessments and other charges upon my real estate, and keep the building and improvements thereon insured and in proper repair; and

*Sixthly.* After providing for the above-mentioned debts, legacies, taxes and charges, to divide the residue of my estate into eight equal parts or shares and invest the same separately on bond and mortgage or in United States Government or State securities, and apply the income of one of said equal eighth parts or shares to the use of my son Charles during his natural life, and at his decease to pay and divide the principal of such equal eighth part or share to or among the lawful issue of my said son Charles equally, and upon the further trust to apply the income of one other of said equal eighth parts or shares to the use of my son Michael W. during his natural life, and at his death to pay and divide the principal of such last-

mentioned equal eighth part or share to and among the lawful issue of my said son Michael W. equally ; and upon the further trust to apply the income of one other of said equal eighth parts or shares to the use of my son Frank during his natural life, and at his death to pay and divide the principal of such last-mentioned eighth part or share to and among the lawful issue of my said son Frank equally ; and upon the further trust to apply the income of one other of said eighth parts or shares to the use of my daughter Anna, wife of Samuel W. Truslow, during her natural life, and at her decease to pay and divide the principal of such last-mentioned eighth part or share to and among the lawful issue of my said daughter Anna equally ; and upon the further trust to apply the income of one other of said equal eighth parts or shares to the use of my daughter Eliza, wife of Michael Weaver, during her natural life, and at her decease to pay and divide the principal of such last-mentioned eighth part or share to and among the lawful issue of my said daughter Eliza equally ; and upon the further trust to apply the income of one other of said equal eighth parts or shares to the use of my daughter Catharine, wife of Martin Hancox, during her natural life, and at her decease to pay and divide the principal of such last-mentioned eighth part or share to and among the lawful issue of my said daughter Catharine equally ; and upon the further trust to apply the income of one other equal eighth part or share to the use of my daughter Sarah, wife of H. L. B. Scott, during her natural life, and at her decease to pay and divide the principal of such last-mentioned eighth part or share to and among the lawful issue of my said daughter Sarah equally ; and upon the further trust to apply the income of the remaining equal eighth part or share to the use of my daughter Celia during her natural life, and at her decease to pay and divide the principal of such last-mentioned eighth part or share to and among the lawful issue of my said daughter Celia equally.

And I do hereby authorize and empower my said executors to let or lease my real estate, to receive the rents and profits thereof, and after the decease of my wife, to sell and convey

the same for such prices and upon such terms as they may deem best for the interests of my estate."

The further material facts are stated in the opinion.

*Geo. F. Betts* for plaintiff. It was the duty of the executors to distribute the estate as soon as the debts and legacies were paid and the residue ascertained. They had no right to retain the estate in bulk in expectation of a rise in value. (*Furniss* v. *Furniss*, 51 How. Pr. 64.) There was an equitable conversion of the real estate. (Redfield on Wills, part 2, p. 121, § 9, pp. 125-6 ; *Bennett* v. *Garlock*, 79 N. Y. 302 ; *Wilder* v. *Ranney*, N. Y. Daily Reg., March 12, 1884; *Power* v. *Cassidy*, 79 N. Y. 602 ; *Hood* v. *Hood*, 85 id. 561 ; *Graham* v. *Livingston*, 7 Hun, 11 ; *Jennings* v. *Conboy*, 73 N. Y. 237 ; *Roseboom* v. *Roseboom*, 81 id. 356 ; *Clark* v. *Leupp*, 88 id. 356 ; *Campbell* v. *Beaumont*, 91 id. 468 ; *Matter of Weston's Estate*, id. 511, 514.) The taxes and expenses incurred by not selling the land within eighteen months should be charged against the executors, or at least should not be charged against the income as has been done in this accounting. (*In re Weston*, 91 N. Y. 514 ; *Matter of Gray*, 27 Hun, 460 ; 1 Story's Eq. Jur., §§ 111, 127.) A trustee cannot hold property " for a rise." He must simply execute his trust, sell the property, invest the proceeds as directed and pay over the annual incomes. (*King* v. *Talbot*, 40 N. Y. 76 ; *Furniss* v. *Furniss*, 51 How. Pr. 64.) The taxes and assessments on unimproved real estate were improperly charged and allowed. (*Matter of Gray*, 27 Hun, 459–460 ; *Fleet* v. *Dorland*, 11 How. Pr. 489 ; *Stilwell* v. *Doughty*, 2 Bradf. 311 ; *Betts* v. *Betts*, 4 Abb. N. C. 317, 438–444 ; *Gunning* v. *Carman*, 3 Redf. 69 ; *Peck* v. *Sherwood*, 56 N. Y. 615.) The allowance to the executors of their commissions upon annual rests was improper. (*Hosack* v. *Rogers*, 9 Paige, 461 ; *Drake* v. *Price*, 5 N. Y. 430 ; *Betts* v. *Betts*, 4 Abb. N. C. 317, 433–441 ; Redfield's Surrogate, 385-6 ; *Wheelwright* v. *Rhoades*, 11 Abb. N. C. 382.) The commissions allowed to the executors are for collecting as well as disbursing, and no other compen-

sation can be charged by or through them for this service. (2 R. S. 93, § 57.) No allowance can be made to a collector. (*Mason* v. *Roosevelt*, 5 Johns. Ch. 534 ; *O'Gara* v. *Clearkin*, 58 N. Y. 663.) The executors had no right to pay $4,397.96 for furniture for Wall House for the purpose of leasing the same as a hotel. (Redfield's Surrogate, 251 ; *King* v. *Talbot*, 40 N. Y. 76 ; *Adair* v. *Brimmer*, 74 id. 539.) The executors had no right to expend $500 on November 4, 1874, in repairing plate-glass. (*Betts* v. *Betts*, 4 Abb. N. C. 324.) The assessments paid annually up to 1880 on the pew in church should not be allowed. (Redf. Surr. 286 ; *Scott* v. *Morrell*, 1 1 Redf. 431 ; *Abernethy* v. *Church of the Puritans*, 3 Daly, 7.) The executors should not be allowed for interest paid out by them on loans from First National Bank and others because they were required by the will ." in the first place to pay all the testator's just debts and funeral expenses." (2 R. S. 78, § 27 ; *Adair* v. *Brimmer*, 74 N. Y. 539.)

*Theodore F. Jackson* for defendant. The allowance of amounts paid to agents for letting and collecting rents of real estate was proper. (1 Hopk. 28 ; 2 Paige, 287 ; 9 id. 160 ; 1 Bradf. 335 ; 1 Redf. 333 ; 58 N. Y. 683.) The trustees had the legal title to the Fifth avenue house, and the right to make the lease, which would not in any way interfere with the sale of the property. (*Newcomb* v. *Keteltas*, 19 Barb. 608 ; *Greason* v. *Keteltas*, 17 N. Y. 491.) The trustees were properly allowed commissions on income of estate. (*Meacham* v. *Sternes*, 9 Paige, 403 ; *Wagstaff* v. *Lowerre*, 3 Abb. Pr. 411 ; *Hurlburt* v. *Durant*, 88 N. Y. 121 ; *Vanderheyden* v. *Vanderheyden*, 2 Paige, 288 ; *Matter of B'k of Niagara*, 6 id. 216 ; *Matter of Kellogg*, 7 id. 266 ; *Hosack* v. *Rogers*, 9 id. 467 ; *Fisher* v. *Fisher*, 1 Bradf. 336 ; *Valentine* v. *Valentine*, 2 Barb. Ch. 430 ; *Drake* v. *Price*, 5 N. Y. 430, 433 ; *Betts* v. *Betts*, 4 Abb. N. C. 317 ; *Morgan* v. *Hannas*, 13 Abb. Pr. [N. S.] 361, 369 ; *Cram* v. *Cram*, 2 Redf. 247 ; *Tucker* v. *McDermott*, id. 321.) The fact that an equitable conversion was intended does not render the power of sale imperative. (*Dodge*

v. *Pond,* 23 N. Y. 69; *Power* v. *Cassidy,* 79 id. 614; *Jennings* v. *Conboy,* 7 id. 237; *Roseboom* v. *Roseboom,* 81 id. 356; *Clark* v. *Leupp,* 88 id. 228.) The court will not control the execution of a discretionary power of sale vested in executors or trustees. (*Bonner* v. *Storms,* 1 Sandf. Ch. 357; *Case* v. *Towle,* 2 id. 426; *Arnold* v. *Gilbert,* 13 id. 556; Story's Eq. Jur., §§ 169, 170, 170a, 1355.) The contestants should have moved for a readjustment of the fees upon papers indicating the alleged errors so as to enable all the facts on which the chief judge acted to appear, or should have procured a return of such facts. (*Kearney* v. *McKeon,* 85 id. 141.)

MILLER, J. The questions presented on this appeal arise upon the accounting of the executors of the last will and testament of William Wall, deceased. By his will the testator, among other things, directed, after making provision for the payment of certain legacies therein named, that the executors should divide the residue of his estate into eight equal parts or shares, and invest the same separately on bond and mortgage, or in United States Government or State securities, and apply the income for the benefit of his children as therein directed. It is claimed that the executors should have reserved the homestead mentioned in the will, and sufficient to pay the widow the annual income of $12,000 during her life, and an annuity to his daughter, and, after the payment of taxes, etc., as provided in the fifth clause of the will should have ascertained the residue and sold the real estate and invested the avails as directed. These directions are very clear and explicit, and did they stand alone by themselves no serious question could be made as to the duty of the executors in the exercise of a sound discretion as to the time and manner of disposing of the real estate and investing the proceeds in accordance with the provisions contained in the will, but a subsequent clause of the will renders it uncertain whether the intention of the testator required the conversion of the real estate into personalty and the investment of the entire residue in accordance with the directions referred to. The provision in question is a general

clause in the will, which reads as follows : " And I do hereby authorize and empower my said executors to let or lease my real estate, and to receive the rents and profits thereof, and, after the decease of my wife, to sell and convey the same for such prices and upon such terms as they may deem best for the interest of my estate." This provision would seem to require that the executors should retain the real estate and let or lease the same during the life-time of the testator's widow, and only upon her death to sell and convey the same. It is very general and evidently embraces all the real estate of the testator and must be regarded, we think, as a qualification and restriction of the previous provision which authorizes a division and investment of the residue of the estate in separate parts. There would seem to be but little ground, from the language which was employed by the testator, for claiming that this clause was intended only to apply to such portion of the real estate as was directed to be appropriated for the benefit of his widow and daughter. If such had been the intention it is fair to assume that apt and appropriate language would have been used for the purpose of expressing it. Taking the various parts of the will which have been referred to into consideration it is a reasonable presumption that the testator intended to leave the question as to the sale of the real estate, before the death of his wife, to the judgment and sound discretion of his executors. While, perhaps, they might have the right to sell, they at the same time were authorized to retain and hold the same until the death of the testator's widow. It appears from the testimony that the executors understood it in this way, and, as it was at least doubtful, there is no valid ground for claiming that upon their accounting they can be made accountable for the failure to sell and dispose of the real estate before the death of the widow. If it was desired to compel the executors to sell under the provisions of the will the proper course would seem to have been to institute a suit for that purpose. This seems to have been done from the reported case of *Hancox* v. *Wall* (28 Hun, 214), although there the claim that the sale should be made is based upon the

failure to sell after the death of the widow. Under the facts presented we do not think that there is any valid ground for the claim that the executors violated their duty in not disposing of the real estate before the death of the widow.

A more serious question arises as to their not selling after her decease which took place in May, 1878. The direction is very clear that the sale is then to be made and the estate divided. The evidence shows that one of the executors, Samuel W. Truslow, died in June, 1877; that another, Charles Wall, died in January, 1879, and that the surviving executor, since the death of the widow, has in good faith made diligent effort to sell and that some sales have been made, and there is no proof that the delay in selling has been unreasonable or that the executors have refused to sell at a fair price offered for any portion of the property, or that the estate has sustained any loss by reason of the failure to sell. On the contrary, it does appear, that some portions of the real estate are producing larger incomes than could be obtained from any amount realized upon a sale of the same reinvested as directed by the will. The will authorizes a sale of the real estate by the executors, after the death of the widow, "for such prices and upon such terms as they may deem best for the interests of my estate." It will be seen that the power conferred is discretionary; the executors are not bound to sell absolutely upon any terms or for any price that may be offered, but are to see that the price and terms are reasonably satisfactory, fair and adequate, and that the property is not sacrificed needlessly for some nominal amount. The proof does not establish that prices could be obtained and terms made which were entirely satisfactory and in accordance with the actual value of the property. The object which the testator had in view being to make his real estate available to the utmost extent for the purpose of investment for the benefit of his children, it is not a reasonable inference that the testator intended immediately upon the death of his wife, that all his real estate should be exposed for sale at public auction and sold to the highest bidder. The executors were to exercise their judgment as to the

time, place and terms upon which the sale should be had. They had the right to sell at private sale if they saw fit and the best price could be obtained in that way, or they were authorized to sell at public auction if they believed that the object intended would be best promoted by such a course. Having in view the record before us we do not think there is any evidence showing such mismanagement in reference to the sale of the property on the part of either of the executors as would make the surviving executor chargeable with any expenditure which may have been incurred by reason of the delay in the sale of the real estate.

We think that the General Term were in error in holding that the amount charged for plate-glass should be stricken out and charged to the person entitled to the estate in remainder. There is no evidence that shows this expenditure was for any thing more than ordinary repairs. The charge made is for " repairs, plate-glass, etc., $500." The only objection made is that this is an improper and unlawful charge against the estate and should not be allowed. It is not objected that the amount should be charged to capital and not to income account, and hence it is too late upon appeal for the first time to raise the objection. The use of plate-glass is not of itself evidence that it is unnecessary as being beyond ordinary repairs, and it is not uncommon in making improvements to use this kind of glass. It can hardly be said to constitute a permanent improvement to a building any more than other improvements which do not form a substantial and material part of the structure. Under the circumstances we think the charge was properly allowed on the accounting and that the General Term erred in rejecting it.

As to the fees of the auditor and referee, it does not appear how many days were spent on the hearing or in examining the accounts and preparing the report, or whether any rate of charges was stipulated for. The contestant should have raised the question by motion to the judge before whom the accounting was had, for a readjustment of the fees, upon papers showing that they were excessive and unlawful, so that all the facts

were presented, or he should have procured a return of such facts. If such a course had been pursued, the fees would not have been paid until the readjustment of the same, and as that was not done, the question did not properly arise upon appeal.

The disallowance by the General Term of the commissions to the trustees on income of estate, we think was erroneous. The entire estate was placed in the hands of the executors as trustees to receive the income and pay the annuities to the widow and daughter and to divide the balance thereof among the children of the deceased as provided. This rendered a distribution of the income essential, and the trustees did make an annual distribution of the same on the anniversary of the testator's death and paid over the several shares, retaining their commissions and taking receipts, the appellant herself having so receipted. The trustees retained no commissions on the principal and it is not made to appear that the amount retained exceeded the amount of their legal commissions or was in any respect illegal. It is claimed that the amount retained was less than that to which they were entitled and the contrary is not established. As a matter of right, the trustees were entitled to their legal commisions. Before the act of 1866 the surrogate had no authority to settle the accounts of a testamentary trustee and the trustee was entitled to the same rate of commission as a trustee under a deed or other instrument, a receiver or assignee for the benefit of creditors, and was held to be entitled to the same rate of compensation by way of commissions as was allowed to executors and administrators. (*Meacham* v. *Sternes*, 9 Paige, 403; *Waystaff* v. *Lowerre*, 3 Abb. Pr. 411.)

Where there is a voluntary accounting and a settlement between the parties, as appears to have been the case here, it may well be doubted whether the right to the commissions retained could be afterward questioned by the parties who had assented to the retention of them by the trustees. (*Hurlburt* v. *Durant*, 88 N. Y. 121.)

The general rule that executors and administrators cannot retain commissions and can only be allowed them upon an

accounting, would seem to be inapplicable to the case at bar. Here the income was required to be paid periodically and the trustee stands in the same position as a trustee who holds an estate and is required to pay the annual income arising from the same to the *cestui que trust.* In such a case the trustee has a clear right to retain the commissions from the annual income, for if paid to the beneficiary it may be questioned whether afterward there would be any way of compelling their repayment to the trustee. To establish the rule that the trustee should have an annual accounting before he was entitled to retain his commissions would cause great expense and, perhaps, operate injuriously upon the parties interested. Within the rule stated we are unable to perceive why the commissions were not properly retained by the executors. The income was specifically appropriated for the payment of the annuities to the testator's wife and daughter, and the balance to his children, in equal shares. This involved the necessity of ascertaining and dividing the income annually, and an annual settlement. The authorities hold that where the account is rendered yearly, in compliance with any statute, or rule, or order of the court, or where annual rests are necessary to charge the party accounting with interest on the balances remaining in his hands, such accounting party is entitled to full commissions on each year's receipts and disbursements. (*Vanderheyden* v. *Vanderheyden,* 2 Paige, 288 ; *Matter of Bank of Niagara,* 6 id. 216 ; *Matter of Kellogg,* 7 id. 266 ; *Hosack* v. *Rogers,* 9 id. 467 ; *Fisher* v. *Fisher,* 1 Bradf. 336.)

Some cases are cited which, it is claimed, sustain the position that the executors or trustees could only receive commissions at the final settlement of the accounts. These cases relate to executors' commissions, and whether the executors were entitled to commissions as executors and also as trustees, and do not cover the precise question here presented. (*Valentine* v. *Valentine,* 2 Barb. Ch. 430 ; *Drake* v. *Price,* 5 N. Y. 430 ; *Betts* v. *Betts,* 4 Abb. N. C. 317.) In the case of *Morgan* v. *Hannas* (13 Abb. Pr. [N. S.] 361), which is not cited by the plaintiff, it is said in the opinion : "As a general

rule annual rests in the accounts of an executor or other trustee cannot be taken for the purpose of allowing him commissions at full rates upon the balances then found," but it appears from the opinion that the decision was made upon another and different ground. The case is not very fully reported, and the rule there laid down might well apply in that case without affecting the question now considered. The case last cited is relied upon in the cases of *Cram* v. *Cram* (2 Redf. 246), and *Tucker* v. *McDermott* ( id. 321) as authority for the doctrine that annual rests and full commissions are not allowed except when an annual accounting is had before the surrogate under the requirement of a rule of court or a statute. As we have seen, the case cited is not authority for such a rule, and the question now discussed has never been precisely adjudicated. The case considered is not one where the question of annual rests is presented as in the cases cited, but one where the executor, acting as a trustee, has annually paid over, in accordance with the provisions of the will, the income of the estate to those who were entitled to the same and taken their receipt therefor, and has never received any commissions upon the *corpus* of the estate. In such a case where an annual statement of the account is required in order properly to distribute the income of the estate held in trust or for the payment of annuities, it is proper and lawful to make annual rests to determine whether a balance is in the hands of the trustees, chargeable with interest, or whether the whole income has been paid over as well as for the purpose of allowing commissions on such annual income. Where a settlement is made annually by the trustee with the *cestui que trust* with the assent of the parties interested no reason exists why the trustee should not retain commissions on the annual income. Upon a subsequent accounting the question as to the correctness of the executors' annual accounts can be determined as well as whether they are chargeable with interest on any balances in their hands.

The objection to the allowance of commissions here is that there was no final accounting. The petition was for an ac-

counting and to compel the respondent, as surviving executor and trustee, to render an account according to law and that he be required to pay over such sum as shall be found due the petitioner upon such accounting. The citation was in accordance with the body of the petition, and the accounting to be had involved an examination of the proceedings of the executors from the death of the testator in 1872. So far as it went it would be a final adjudication in reference to the acts of the executors or trustees, and no final accounting could be had until all the real estate of which the testator was seized at the time of his death was finally disposed of. This might require a delay of many years, the effect of which would be to deprive the executors of any commissions during such period of time. Such a rule would be unreasonable and, we think, should not be upheld. No sound reason exists why a trustee should not be entitled to receive the commissions on the income of an estate which he annually pays over and accounts for, or why his compensation should be deferred until the final settlement of the same. At any rate they were chargeable with the amount in their hands at the end of each year and entitled to lawful commissions on the income.

The other questions in the case are sufficiently considered in the opinion of the General Term and do not require discussion.

The judgment of the General Term should be reversed so far as it modifies the decree of the first judge and that decree should be affirmed with costs against the plaintiff.

All concur.

Judgment accordingly.