ORLEANS COUNTY.—HON. ISAAC S. SIGNOR, SURROGATE.—May, 1888.

ORPHAN ASYLUM *v.* WHITE.

*In the matter of the estate of* ISRAEL STILES, *deceased.*

The will of testator, which disposed of his real and personal property by the same clauses, (1) gave the use of all to his wife for life, with directions to the executors, if necessary, to expend the principal for her support, further providing that his daughter, E., should share in such use, if she stood in need thereof; (2) after the wife's death, gave " all the use of his remaining estate to E. and her husband, J., during their lifetime, respectively", (3) after the death of E. *and* J., bequeathed all the residue of his estate to an Orphan asylum, an institution incorporated in 1838. The instrument was executed within two months of the death of testator, who was survived by the beneficiaries. It was contended that the power of alienation and absolute ownership of property was suspended beyond the statutory limit.—*Held,*

1. That there was no trust, or contingent limitation, created, whereby the

power of alienation of the real property was suspended for any period whatever.

2. That E. and J. took as tenants in common, with cross remainders; which, being invalid under the statute, might be dropped, and the gift to the asylum be held good to the extent of one half the testator's estate.

3. That, in order to determine the value of this half, the aggregate value of the several life interests, at the time of testator's death, should be deducted from the value, at that time, of the entire estate; and, it appearing that the whole remainder did not exceed one half of such estate, the asylum was entitled to receive the same,—one half payable upon E.'s death, and the other upon that of J.

Purdy v. Hayt, 92 *N. Y.*, 446—compared.

CONSTRUCTION of will, on judicial settlement of account of administrator, with decedent's will annexed. The facts are stated in the opinion.

W. C. RAMSDALE, *for administrator, c. t. a.; and*

JOHN H. WHITE, *administrator, c. t. a., in person.*

THOMPSON & SPENCER, *for Ellen E. Sanborn, and another.*

T. C. MONTGOMERY, *for Orphan Asylum.*

THE SURROGATE.—In order to determine what disposition shall be made of funds in the hands of the administrator, and to properly settle and allow his account, it becomes necessary to construe the will of the testator; which, under such circumstances, falls within the jurisdiction of this court (Purdy v. Hayt, 92 *N. Y.*, 446).

The testator gave both his real estate and personal property by the same clauses of the will. He first gives the use of all his property to his wife, during her life, with directions to his executors, if by reason of sickness, infirmity or accident, the interest of his estate shall be insufficient for her comfortable support

and maintenance, to use so much of the principal as may be necessary for that purpose; and also provides that, should his daughter Ellen have need of it, she shall share with his wife in the use of his estate. After the death of his wife, he gives "All the use of my remaining estate . . . . . . to my daughter Ellen E. Sanborn and to Josiah Sanborn, her husband, during their lifetime, respectively"; and, "Third. After the decease of my daughter and her husband, I bequeath all the residue of my estate to the Rochester City Orphan Asylum." It appears in evidence that there is no such institution as the Rochester City Orphan Asylum, but that the institution evidently meant was the Rochester Orphan Asylum, and they are entitled to any legacy that they would have been entitled to, if properly named (Board of Missions v. Scoville, 3 *Dem.*, 516). The will was executed within two months of the death of the testator, but the Rochester Orphan Asylum having been incorporated prior to ch. 319, Laws of 1848 (by act passed March 23d, 1838), that act does not affect this corporation, and the gift is not void on that account (Kerr v. Dougherty, 79 *N. Y.*, 327; Stephenson v. Short, 92 *N. Y.*, 433).

The act of 1860, however, does apply (ch. 360), and would render a devise or bequest to this society valid, only as to one half of the testator's estate, as he died leaving a wife and child, him surviving. The remaining questions are to be considered for the purpose of determining whether the gift of one half to the Rochester Orphan Asylum is valid. It is claimed that the will is void, as creating a trust, and suspending the power of alienation of the real estate, and the absolute

ownership of the personal property, beyond the statutory limit of two lives in being. The intent of the testator was evidently to give a life estate to his wife, then an estate to his daughter and her husband for life, with cross remainders; and such would be the effect of the will, unless the relation of husband and wife existing creates a different interest (Purdy v. Hayt, 92 *N. Y.*, 446, 452). In the last case, the testator gave his real estate to his two sisters "during their respective lives," and was held to create an estate as tenants in common, with cross remainders. The power of alienation is not suspended at all as to the real estate, by the will, as all the beneficiaries are in existence, and there is no contingent estate, that would interfere with the alienation of the real property. Immediately on the death of the testator, the widow, the daughter and her husband, and the Orphan Asylum could join in a conveyance, and pass the entire title. There are only two ways in which the power of alienation can be suspended, viz.: "by an express trust or power in trust, of such a character that the land cannot be alienated during its continuance, or by a contingent limitation" (per RAPALLO, J., in Radley v. Kuhn, 97 *N. Y.*, 34; Everitt v. Everitt, 29 *N. Y.*, 71).

The contingent limitation does not exist, nor do I think that such a trust is created by the will. It has always been held, and is now the rule, that courts should seek to sustain the expressed will of the testator, where they can do so, and so far as it can be done, without contravening the express provisions of the statutes regulating testamentary dispositions.

Neither will a trust be raised by implication, where the only effect of such a construction would be to raise it for the purpose of destroying it as soon as created, or of invalidating the instrument ·by which it is created (Smith v. Edwards, 88 *N. Y.*, 102). The only portions of the will that could possibly be construed as tending to create a trust are the provisions authorizing the executors to apply a portion of the principal to the use òf his wife in certain contingencies; which might seem to imply an intention that they should have the possession of the *corpus* of the estate for that purpose. But in that event, after the death of his wife, no necessity could arise for holding that the title was in the executors. They are not named as trustees, nor is any gift or devise made to them, either as trustees or executors. In fact, no power in reference to the real estate seems to be conferred ·on the executors, unless a power to sell the same for the benefit of the widow, should it become necessary to do so in her lifetime for her support, could be implied. This would, at all events, terminate at her death, and thereafter the property seems, without any contingency, to be absolutely vested in the beneficiaries, without any estate in the executors, and without any power conferred upon them to sell, lease or manage the real estate.

If the personal property is retained for the purpose of collecting and paying over the income, it does not necessarily require the creation of a trust to do this (Smith v. Edwards, *supra*). Nor does it appear certain that the executors were to hold the personal property during the lifetimes of the beneficiaries, should they

seek to obtain possession of it, upon tendering a proper bond (Livingston v. Murray, 68 *N. Y.*, 485). I cannot see that the will conveys any power or creates any trust in regard to the management of the real estate. There is no express direction conferring any such power, nor does there appear to be any provision in the will from which such an intent could be inferred; and I am, therefore, of the opinion that the administrator, in managing the real estate, has acted, and will, if he hereafter continues to act, do so, not by virtue of any power given him by the will, but as an agent for the parties interested, under an agreement with them, either express or implied. While a decision upon this hearing may only incidentally affect the real estate, it is nevertheless proper to discuss the rules and restrictions relating to its disposition and ownership, as it has been held by the Court of Appeals that the absolute ownership of personal property is only suspended in the same manner as is the power of alienation of real estate (Gilman v. Reddington, 24 *N. Y.*, 9–18; Bliven v. Seymour, 88 *N. Y.*, 469–478).

If this question had not been so settled, my own views would be in accordance with those expressed by the court, in Converse v. Kellogg (7 *Barb.*, 596). Section 1, 1 *R. S.*, 773 (3 R. S., 7th ed., 2256), provides that the absolute ownership of personal property shall not be suspended for more than two lives in being, etc.; and § 2 provides as follows: "In all other respects, limitations of future or contingent interests of personal property shall be subject to the rules prescribed in the first chapter of this act, in relation to future estates in land." These rules provide that,

where a remainder is limited on more than two life estates, all the life estates, subsequent to those of the two persons first named, shall be void, and, upon the death of the two first named, the remainder shall take effect, in the same manner as if no other life estates had been created.

It is claimed, in this case, that, while the absolute ownership of personal property is suspended, provided the limitation in excess of two lives in being may be cut off, the remainder is still valid; but it is claimed, upon the other side, that the limitation is upon more than two lives in being, and so created that the excess of two lives cannot be cut off, and that, therefore, the remainder is invalid. The daughter and her husband, unless the relation of husband and wife establishes a different rule, would take as tenants in common, with cross remainders, after the termination of the life estate of the widow (Purdy v. Hayt, 92 *N. Y.*, 446). The estate of the widow would continue through one life; then the estate of the one first dying would continue through his or her life and during the life of the survivor, before actual payment of the remainder to the Orphan Asylum; which would clearly be more than two lives in being.

In Purdy v. Hayt (*supra*), the will gave certain real estate to the testator's sisters, Jane and Catherine, during their respective lives, and, after their death, he directed the income to be paid to his niece, during her life, and that, after her death, the principal should be paid to her children, should she leave any, and if not, to other beneficiaries named in the will. The court says, at page 452: "We are of opinion that, by

the true construction of the will, the devise to the testator's sisters, Jane and Catherine, vested in them a life estate in the farm as tenants in common, with cross remainders." In that case, the will gave the executors power to sell after the death of Jane and Catherine. In this case, the Asylum is to take " after the death of Ellen and her husband." The court in that case say, further, at page 455 : " The law, as we have seen, permits only two successive estates in the same property. The two sisters of the testator took, as we have held, an estate in the farm as tenants in common, with cross remainders for life. The life estate of his sister Jane, who first died, terminated on her death, and her enjoyment constituted one life estate in her share. A second life estate in that share then vested in her sister Catherine, and was spent at her death. The limit of the statute as to that share was then reached, and no subsequent life estate therein could be limited either in the land or the proceeds ; " and held that the life estate in the proceeds of that share, attempted to be created, was void, but that, in the case of the other sister's share, but one life estate had run at her death, and that, therefore, an additional life estate could be created before the remainder took effect.

This case is similar in many respects. The gift there was first to the two as tenants in common, by words in substance the same as those by which the gift in this case is made to Mrs. Sanborn and her husband. The cross remainders were regarded as equivalent to a life estate, which might be struck out when necessary to save the devise of the remainder. Notwith-

standing the tendency of the decisions to hold that the common law relations of husband and wife still exist, to some considerable extent, in respect to property (Zorntlein v. Bram, 100 *N. Y.*, 12; Robins v. McClure, 100 *N. Y.*, 328), in this case these decisions can have no effect. If the husband takes at all after the wife's death, it is by virtue of the will, and not by virtue of his being her husband. At her death, all her interest ceases, and there would be nothing to pass over to her husband as such, but the will provides, in legal effect, that he shall, in such event, become the legatee to the use which she had before enjoyed.

The interests are distinct, although undivided during the lifetime of both. The husband could not, as such, have any interest in the body of the estate, of which the wife had the use, as she never was the owner of that. The husband and wife in this case were neither joint tenants nor tenants by the entirety, and neither could take anything by right of survivorship. Their interests were the same as if they were unmarried. Regarding them, then, as tenants in common with cross remainders, the cross remainders, being in effect a third life estate, may be dropped, and the gift of one half of the remainder of the testator's estate be held good.

This brings us to the consideration of the share of the estate taken by the Asylum, or rather to the question, what constitutes one half of the estate at the time of the testator's death, within the meaning of the statute. The rule for ascertaining this is laid down in Hollis v. Drew Theol. Seminary (95 *N. Y.*,

166), and must be followed in this case. The time must be of the death of the testator (Harris v. Am. Bib. Soc., 2 *Abb. Ct. App. Dec.*, 316). To determine the amount of his estate in accordance with these rules, the widow's dower in the real estate should first be ascertained and deducted (Chamberlain v. Chamberlain, 43 *N. Y.*, 424). This should ordinarily be ascertained on the principle of life annuities. This method is resorted to, where the time is not actually known, but in this case it appears that the widow lived six years and .833 of a year; so we may adopt that as the number of years' purchase of her annual dower interest. The value of an estate need not be determined by an annuity table in all instances, but may be ascertained by such other means as are in any case available (95 *N. Y.*, 179). The value of the real estate is conceded to have been, at the death of the testator, $1,300. One third of this, or $433.33, at five per cent., for 6.883 years, is equal to $148.05. The whole property was stipulated to have been worth at the testator's death, and over and above his debts, $6,674.54; deduct the dower, and it leaves $6,526.49.

If my views are correct, as to the manner in which the daughter and her husband hold, they are each practically entitled to the use of one half of this amount, or, computed at five per cent., an annuity of $163.16. Mrs. Sanborn, at the death of the testator, was 41 years of age, and by the Northampton table her annuity was worth 11.695 years' purchase, or $1,908.16. Mr. Sanborn's age was 58 and his annuity was worth 8.801 years' purchase, or $1,436.97. The present worth of all the legacies was the present

worth of the life estates and remainders making up the sum of $6,526.49. The gift of the whole of this, payable one half at the death of Mrs. Sanborn and one half at the death of Mr. Sanborn, is not equal to the two life estates, and therefore is not in excess of the amount which the testator could give to a charitable society. The words of the will, giving the remainder after the death of the life tenant, did not postpone its vesting (Baker v. Woods, 1 *Sandf. Ch.*, 131; Matter of Mahan, 98 *N. Y.*, 372).

The administrator is entitled to claim his full commissions on income which has annually been ascertained and paid over (Hancox v. Meeker, 95 *N. Y.*, 528). Where an annual ascertainment and paying over of income has not actually taken place, he is entitled to only one set of commissions for receiving and paying out, to be computed on the aggregate amount of principal and income, re-investments not being included in this aggregate (Betts v. Betts, 4 *Abb. N. C.*, 437).