ROBERT R. STEPHENSON et al., Respondents, *v.* SPENCER D. SHORT et al., Respondents, THE ONTARIO ORPHAN ASYLUM et al., Appellants.

92  433‾‾
j 151  344

A devise or bequest to a corporation organized under the act of 1848 (Chap. 319, Laws of 1848), providing for the incorporation of " benevolent, charitable, scientific and missionary societies;" contained in a will made within two months of the testator's death, is, by the terms of the exception in the provision of said act (§ 6) authorizing such corporations to take by devise or bequest, invalid ; and this, although the testator leaves no wife, child or parent.

*Lawrence* v. *Elliott* (3 Redf. 235), overruled.

Where by the charter of a missionary society (§ 2, chap. 41, Laws of 1862) it was authorized to take by bequest or devise " subject to the provisions of law relating to bequests and devises to religious societies," *held,* that said exception in the provision of the act of 1860 applied ; and that a bequest to the society, in the will of one who died within two months after the execution of the will, was invalid.

(Argued March 10, 1883 ; decided June 5, 1883.)

Appeal from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made the second Tuesday of June, 1882, which reversed in part a decree of the surrogate of the county of Ontario, upon the final accounting of the executors of the will of James Stephenson, deceased. Reported below (27 Hun, 380).

The material facts are stated in the opinion.

*John E. Parsons* for appellants. All the provisions of section 6 of the act of 1848 (Chap. 319) are limited to the case of a person leaving a wife, child· or parent. (*Squire's Case,* 12 Abb. Pr. 38 ; *Jackson* v. *Lewis,* 17 Johns. 475 ; *People* v. *N. Y. C. R. R. Co.,* 13 N. Y. 78 ; *Waller* v. *Harris,* 20 Wend. 555, 562 ; *Lawrence* v. *Elliot,* 3 Redf. 235 ; *Levy* v. *Levy,* 33 N. Y. 97 ; *White* v. *Howard,* 52 Barb. 294, 314 ; *Chamberlain* v. *Chamberlain,* 3 Lans. 348, 355 ; 43 N. Y. 424, 440 ; Willard's Eq. Jur. 576 ; *Currin* v. *Fanning,* 13 Hun, 458, 473 ; *Kerr* v. *Dougherty,* 79 N. Y. 327, 351 ; Redfield's Surr. Ct. Prac. 185.) The provision is in derogation of the common-law right of a testator to dispose of his property by will and should be strictly construed. (4 Kent, 501 ; 1 Redfield on Wills, 1 ; *Newell* v. *Wheeler,* 48 N. Y. 486 ; *Kerr* v. *Dougherty,* 79 id. 327, 355 ; 9 Bacon's Abr. 246 ; Story's Com. on Eq., § 1165.) It was the intention of the legislature in enacting this statute to restrain charitable donations only in favor of lawful heirs. (Code Theodos. Lib. 16, title 2, § 4 ; Story's Eq., § 1137, citing 2 Domat ; id., §§ 1139, 1141 ; Civ. Law, B. 4, tit. 2, § 6, art. 1, §§ 2, 7 ; *Williams* v. *Williams,* 4 Seld. 525 ; Essays in Anglo-Saxon Laws, 107, 108 ; 2 Bl. Com. 268, 269 ; *Magna Carta,* 9 Hen. 3, chap. 36, A. D. 1225 ; Westminster, 3 ; 18 Edw. I, chap. 3 ; 2 Bl. Com. 271, 272, 273 ; *Atty.-Gen.* v. *Day,* 1 Ves. Sen. 218 ; 1 Jarman on Wills, 449 ; Shelford on Mortmain, 120.) The policy of our State has not been to restrict benevolent institutions in acquiring property, but it has uniformly encouraged them, and restrictive provisions were made almost wholly for the benefit of the heirs and near relatives of the deceased. (*Levy*

v. *Levy*, 33 N. Y. 97, 112 ; *Yates* v. *Yates*, 9 Barb. 324, 339 ;
1 Greenl. Laws 71 ; 2 Van Ness and Woodworth's N. Y. Laws,
212 ; Laws of 1840, chap. 318 ; Laws of 1846, chap. 74;
Laws of 1849, chap. 273 ; Laws of 1862, chap. 302 ; Laws of 1860,
chap. 360 ; Willard's Eq. Jur. 577.)    The desire to bene-
fit the relations of the testator, and not the feudal policy of the
English statutes, as far as they existed, was the *animus* which
prompted our mortmain laws in the United States. (Story's
Eq. Jur., § 1194 ; *Atty.-Gen.* v. *Stewart*, 2 Mer. 143, 163 ;
2 Kent's Com. 282 ; *Perin* v. *Carey*, 24 How. [U. S.] 465 ;
Gen. Laws, § 235 ; Ill. R. S., chap. 23, § 1 ; Missouri Genl. Stat.,
chap. 70 ; Minn. Stat. at L., chap. 17, § 150 ; R. S. 472,
§ 4 ; 1 R. S., chap. 19, § 10 ; Mass. Pub. Stat., 656, § 7 ; R.
I. Pub. Stat., chap. 160, § 6 ; Code of Iowa, § 1101 ; Califor-
nia Code, § 6313 ; Ohio R. S., § 5915 ; Georgia Code, § 2419 ;
*Reynolds* v. *Bristow*, 37 Ga. 283.)    The surrogate erred in
holding that the void legacies lapsed and went to the next of
kin.   They go to the Presbyterian Board of Home Missions
as residuary legatee.   (2 Jarman on Wills, 365 ; 2 Redfield on
Wills [3d ed ], 115 ; *Bernard* v. *Minshull*, 1 Johns. [Eng.
Ch.] 276 ; *King* v. *Strong*, 9 Paige, 94 ; *Floyd* v. *Barker*, 1
id. 480 ; *Roberts* v. *Cooke*, 16 Ves. 451 ; *Allen* v. *White*, 97
Mass. 504 ; *Kerr* v. *Dougherty*, 79 N. Y. 327; Dayton on
Surr. [3d ed.] 476 ; *Bernard* v. *Minshull*, 1 Johns. [Eng. Ch.]
276, 279 ; *Banks* v. *Phelan*, 4 Barb. 80 ; *King* v. *Woodhull*,
3 Edw. Ch. 79–82 ; *Moreton* v. *Fossick*, 1 B. & Ad. 186 ;
*Cambridge* v. *Rous*, 8 Ves. 12, 25 ; *Bland* v. *Lamb*, 2 J. &
W. 399 ; *King* v. *Strong*, 9 Paige, 94 ; *Banks* v. *Phelan*, 4
Barb. 80 ; *Waring* v. *Waring*, 17 id. 553 ; *Shanley* v. *Baker*,
4 Ves. 732 ; *Roberts* v. *Cooke*, 16 id. 451 ; 2 Jarman on Wills,
365 ; *James* v. *James*, 4 Paige, 115 ; *Van Kleeck* v. *Dutch
R. Church*, 6 id. 600 ; 20 Wend. 457 ; *Youngs* v. *Youngs*,
45 N. Y. 254 ; *Kerr* v. *Dougherty*, 79 id. 327.)

*H. L. Comstock* for Ontario Orphan Asylum, appellant.
The restriction contained in the last clause of section 6 of
chapter 319 of the Laws of 1848 applies only to devises or

bequests of a person leaving a wife, child or parent (*Lawrence* v. *Elliott*, 3 Redf. Surr. 335 ; Willard on Real Estate, 501 ; Willard's Equity Jurisprudence, 576 ; *Beekman* v. *The People*, 27 Barb. 305.)

*John S. Morgan* for the Baptist Missionary Convention, appellant. This corporation had full power to receive the bequest, under the first section of its charter. (Laws of 1862, chap. 41, § 1 ; Laws of 1817, chap. 128, p. 116 ; Laws of 1825, chap. 170 ; Laws of 1841, chap. 131 ; *Sherwood* v. *Am. Bible Soc.*, 40 N. Y. 564 ; *Williams* v. *Williams*, 8 id. 515 ; *In re Howe*, 1 Paige, 214 ; Angell & Ames on Corporations, § 177 ; 1 Jarman on Wills [R. & T. ed.], 388, note.) The court below erred in assuming that section 6 of the act of 1848 (Chap. 319) was general in its application. (*Lefevre* v. *Lefevre*, 59 N. Y. 447; *Kerr* v. *Dougherty*, 79 id. 336.) The law of 1848 does not apply to this case, where the decedent left no wife, child or parent him surviving. (*Lawrence* v. *Elliott*, 3 Redf. Surr. 235 ; *Kerr* v. *Dougherty*, 79 N. Y. 327.)

*E. A. Nash* for Robert R. Stephenson *et al.*, respondents. A devise or bequest to a corporation formed under the act of 1848 (Chap. 319, § 6) is void where the will is made within two months of the death of the testator. (*Marx* v. *McGlynn*, 88 N. Y. 358; *Lefevre* v. *Lefevre*, 59 id. 447, 448 ; *Lawrence* v. *Elliott*, 3 Redf. 235, 243 ; Willard's Equity Jurisprudence [Potter's ed.], 576 ; 27 Barb. 305 ; 2 T. & C. 339 ; McClellan's Surr. Pr. 104 ; *Areson* v. *Areson*, 3 Den. 458 ; *Arcularius* v. *Sweet*, 25 Barb. 403 ; *Beekman* v. *Beekman*, 27 id. 304, 305.) The Baptist Missionary Convention and the Board of Home Missions of the Presbyterian Church are both within the law of 1848. (*Kerr* v. *Dougherty*, 79 N. Y. 327 ; *People* v. *Utica Ins. Co.*, 15 Johns. 381.) The sums bequeathed to the Sunday schools were properly distributed by the Surrogate's Court as in case of intestacy. (*Kerr* v. *Dougherty*, 79 N. Y. 328.)

*Elihu M. Morse* for Sibley Stephenson *et al.*, respondents. The bequest to the Ontario Orphan Asylum is void. (*Lefevre*

v. *Lefevre*, 59 N. Y. 443; *Kerr* v. *Dougherty*, 79 id. 328; *Marx* v. *McGlynn*, 88 id. 357; *Stephenson* v. *Ontario Orphan Asylum*, 27 Hun, 380.) The same principle governs as to the bequest to the Presbyterian Board of Home Missions. The act of incorporation subjects it to all the provisions of law relating to devises and bequests by last will and testament. The act of 1848 is a general law controlling this society. (*Kerr* v. *Dougherty*, 79 N. Y. 328.)

RAPALLO, J. The act of 1848, entitled "An act for the incorporation of benevolent, charitable, scientific and missionary societies" (Chap. 319 of the Laws of 1848) contains the following provision :

"§ 6. Any corporation formed under this act shall be capable of taking, holding or receiving any property, real or personal, by virtue of any devise or bequest contained in any last will or testament of any person whatsoever, the clear annual income of which devise or bequest shall not exceed the sum of $10,000 ; provided no person leaving a wife or child, or parent, shall devise or bequeath to such institution or corporation more than one-fourth of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of such one-fourth, and no such devise or bequest shall be valid in any will which shall not have been made and executed at least two months before the death of the testator."

James Stephenson, the testator, a resident of Ontario county, died November 27, 1878, leaving a will which was executed only two days before his decease, wherein he made bequests to the Ontario Orphan Asylum, a corporation formed under the before-mentioned act of 1848, and to certain missionary societies. He left no wife, child or parent, but left him surviving several brothers and sisters, nephews and nieces, his next of kin.

On a final accounting of the executors of the will before the surrogate of Ontario county, the next of kin of the testator contested the validity of the bequests before mentioned, on the ground that the will was executed within less than two months

before the death of the testator, viz., within two days before his death. The surrogate, however, decided that the bequests were valid, holding that the two months clause in section 6 of the act of 1848 applied only to cases where the testator left a wife, child or parent, and he delivered a very able opinion in support of this view.

The Supreme Court, at General Term in the fourth department, reversed the decree of the surrogate and held that the two months clause applied to all wills, and was not confined to cases where the testator left a wife, child or parent.

The sixth section of the act of 1848 has been frequently before this court, but the precise point now presented has never before been specifically raised, or been passed upon. It has been elaborately argued here, and we have given to it the mature consideration which the importance of the question demands.

After a careful examination of the act and of the exhaustive briefs of counsel, we are satisfied that the point taken by the appellant's counsel cannot be sustained, and that the true construction of the last provision of section 6 is that no devise or bequest to any corporation formed under the act shall be valid in any will which shall not have been made and executed at least two months before the death of the testator.

The section contains three distinct provisions. The first confers upon the corporations referred to, the power to take " by devise or bequest," by the will of any person, limiting the amount which they may so take.

The second restricts the power of testators to devise or bequeath to such corporations, in certain cases, and prohibits a testator who leaves a wife, child or parent from devising or bequeathing to such a corporation more than one-fourth of his estate; but for the purpose of preventing an entire failure of a devise or bequest to such a corporation, in case the limit should be transgressed, it provides that " *such devise or bequest* " shall be valid to the extent of such one-fourth.

The third and last provision is that " *no such devise or be-*

*quest* shall be valid in any will which shall not have been exe-
cuted at least two months before the death of the testator."

The appellants contend that, inasmuch as the second pro-
vision refers to a devise or bequest to a corporation formed un-
der the act, made by a person leaving a wife, child or parent,
and the saving clause refers to "*such devise or bequest*," these
words, when repeated in the next succeeding third provision,
must be construed as referring, not merely to a devise or be-
quest to a corporation formed under the act, but the word
" such " carries with it the limitation contained in the second
provision, and that it refers only to a devise or bequest to such
a corporation made by a person leaving a wife, child or parent.

We cannot agree to this reasoning. It must be observed
that all three provisions relate to a devise or bequest to one of
these corporations. The first, to such devises and bequests
when made by any person whomsoever; the second, to such
devises and bequests when made by certain persons, and the
third declares that " no such devise or bequest " shall be valid
in any will which shall not have been made within the time
specified, without reference to the person by whom made, un-
less the word " such " be regarded as having been introduced
for the purpose of restricting its operation to wills made by
persons referred to in the second provision.

We do not think that the word " such " was inserted with
that view. It is apparent that it was necessary to the sense of
the sentence, for without it the provision would declare invalid
every devise or bequest in every will not executed two months
before the death of the testator. We think the word " such "
was inserted for the purpose of connecting the provision with
the subject of the section, which was, devises and bequests to
corporations formed under the act. The same idea might have
been conveyed by resorting to repetition, and saying that no
devise or bequest to any corporation formed under the act
should be valid, etc.; but as such devises and bequests were
the subject of the whole section, the word " such " was doubt-
less adopted for the sake of brevity. We think it very clear
that the first provision related to the power of the corporations

to take, the second to the power of testators, in certain cases, to give to them, and the third to the time which in all cases must elapse between the execution of the will and the death of the testator to render the gift valid.

The appellants, however, contend that this construction is not consistent with the intent of the act, and that the sole purpose of the two months clause was to protect the *wife, children* or *parents* of the testator against his inconsiderate acts when *in extremis.*

Counsel refer to numerous *dicta* and authorities relating to the English statute of mortmain (9 Geo. II, chap. 36), which prohibited the giving of land for charitable uses, unless by deed executed twelve months before the death of the donor.

The preamble of this act and the cases cited, show that the mischief aimed at by that statute was the making of large and important alienations and dispositions by languishing or dying persons, or by other persons, to charitable uses, to take effect after their deaths, to the disherison of their heirs, and the counsel cites the comments of Judge STORY upon that statute (Story's Eq. Jur., § 1194), where that eminent jurist suggests that it deserves the consideration of every wise American legislator, whether provisions similar to those of that celebrated statute are not proper to be enacted in this country, with a view to prevent undue influence upon pious and feeble persons in their last moments, and check the unfortunate propensity to acquire fame as a religious devotee and benefactor, at the expense of the natural claims of blood and parental duty. The observations of distinguished jurists of our own State upon the sixth section of the act of 1848 are cited as indicating their opinion that the purpose of the two months clause was to protect wives, children and parents from improvident testamentary dispositions to charitable or religious institutions, made *in extremis*, but it will be found on examination that these observations were intended to refer to the portion of the sixth section which limits the power of the testator to give more than one-fourth of his estate, and to the act of 1860, which increases the amount to one-half of his estate. The only case

in which the two months clause is directly passed upon is
*Lawrence* v. *Elliott* (3 Redf. 235), where the surrogate sus-
tained the construction contended for by the appellants, while
in *Beekman* v. *People* (27 Barb. 260, 305), Judge DAVIES
expressed a contrary opinion.

Conceding that the purpose of the two months clause is to
prevent the testator when *in extremis* from devoting his estate
to charitable or religious purposes to the disinheriting of his
kindred and heirs, and that it is intended for their protection,
we find nothing to indicate that it ever was the policy of the
legislature of this State to confine that protection to the wife,
children, or parents of the testator.   These are especially pro-
tected by the provisions limiting his power of disposition to
one-quarter, even if the will is executed more than two months
before his decease.   There is nothing in the course of legisla-
tion on this subject, which sanctions the idea that it has been
the policy of the legislature to confine the protection of the
two months clause to wives, children and parents, but so far
as appears, its policy has been quite the reverse.   The act
incorporating the "Presbyterian Committee of Home Mis-
sions," etc. (Laws of 1862, chap. 340), of which corporation
the present Board of Home Missions, one of the appellants,
is one of the successors, contains the following provision :

"§ 5. No inhabitant of this State *who shall die leaving a
wife, child or parent,* shall devise or bequeath to the corpora-
tion hereby created more than one-half of his or her estate,
after the payment of his or her debts, but a devise or bequest
*by such inhabitant* shall be valid to the extent of such one-
half ; in *no case,* however, shall *any devise* or bequest to such
corporation be valid in any will made by *any inhabitant of
this State* which shall not have been made and executed at
least two months before the death of the testator or testatrix."

This provision was evidently intended for the purpose of
incorporating in the special charter then being granted the
second and third provisions of the general act of 1848, with
the modifications only, of confining their restrictions to wills
made by inhabitants of this State, and of increasing the limit

of one-quarter, in the second provision, to one-half. But the two months clause is too explicit to be capable of being misunderstood, and clearly shows that the policy of the legislature was to invalidate all devises and bequests by any inhabitant without reference to the circumstance of his having a wife, child or parent.

The counsel for the appellants refers to the case of *Reynolds* v. *Bristow* (37 Ga. 283), and claims, on the strength of that case, that notwithstanding the definite and clear language of section 5 of the act of 1862, above cited, it would not, even if applicable to the Board of Home Missions, invalidate the bequest in controversy. Perhaps the Georgia case does go that length; but if it does, we could not follow it.

Section 5 of chapter 189 of the Laws of 1862, incorporating the Mutual Aid Society of the East Genesee Annual Conference, provides that the corporation may take by devise or bequest, etc., provided " that such corporation shall not take by the last will and testament of any person leaving a husband, wife, child, or parent more than one-half of his or her estate remaining after his or her debts are paid, nor shall it take *any thing* by *any* last will and testament which shall be made within two months of the death of the testator."

Section 5 of chapter 458 of the Laws of 1862, incorporating the American Missionary Association, contains the same provision as is contained in the charter of the Presbyterian Committee of Home Missions, before cited, and invalidates any devise or bequest to the corporation by *any inhabitant* of this State, made within two months before his or her death.

We have not been referred to any act of the legislature of this or any other State, containing the two months clause, or any similar provision, in which the operation thereof is confined to wills made by persons leaving a wife, child or parent (unless it be the State of Georgia as its statute was construed in *Reynolds* v. *Bristow, supra*), nor can we see any reason for so confining it. Provisions of this character, wherever we have found them in the statutes of other States, are of general application to the wills of all persons, whoever their heirs may

be. In Pennsylvania the act of 1855 provides that "No estate, real or personal, shall hereafter be bequeathed, devised or conveyed to any body politic or to any person, in trust for religious or charitable uses, except the same be done by deed or will, attested by two credible witnesses, at least one calendar month before the decease of the testator or alienor, and all dispositions of property contrary hereto shall be void, and go to the residuary legatee or devisee, next of kin or heirs," etc.

In California the Pennsylvania statute is adopted in substantially the same language, except that, instead of referring to religious or charitable uses, it refers to benevolent or charitable societies and to charitable uses, and restricts the power of the testator to giving more than one-third of his estate to such uses, if he leaves legal heirs. The statute of Georgia, which has been referred to and which was construed in *Reynolds* v. *Bristow*, reads as follows (Code of 1882, § 2419): "No person leaving a wife or child, or descendants of a child, shall by will devise more than one-third of his estate to any charitable, religious, educational or civil institution, to the exclusion of such wife or child; and *in all cases* the will containing such devise shall be executed at least ninety days before the decease of the testator, or such devise shall be void."

The policy and purposes of the statute of mortmain are declared by Lord HARDWICKE, in *Atty.-Genl.* v. *Day* (1 Ves. Sr. 218), to have been

*First.* To prevent the locking up land and real property from being aliened; and

*Second.* To prevent persons in their last moments from being imposed on to give away their real estate from their families.

Shelford attributes the same policy and object to the act, enlarging the second by declaring it to have been to prevent testators in their last moments from being imposed upon by mistaken notions of religion, in giving away their estates from their heirs and families. (Shelford on Mortmain, 120.)

Judge STORY, in suggesting the enactment of similar provisions in this country, states the purpose to be " with a view to prevent undue influence and imposition upon pious and feeble minds in their last moments, and to check an unfortunate propensity (which is sometimes found to exist under a bigoted fanaticism), the desire to acquire fame as a religious devotee and benefactor at the expense of all the natural claims of blood, and parental duty." The statutes which have been enacted in this State on the subject are doubtless founded on the policy of the statute of mortmain, and if the policy of that statute was to prevent testators from being imposed on to give away their estates from their heirs and families, it is impossible to assign any reason for limiting that policy to testators leaving a wife, child or parent. The statute itself did not so limit it, but on the contrary the preamble, as has been seen, speaks of improvident alienations by languishing and dying persons, to take effect after their death, to the disherison of their *heirs*. Brothers and sisters, nephews and nieces are very near kindred and certainly entitled to be considered in guarding against undue influence over a testator, yet not only they, but even grandchildren would, on the theory of the appellants, be without the protection of the statute. Those standing in a still closer relation to the testator, his wife, children and parents, receive greater and especial protection from the statute, for even though the will be made more than two months before the death of the testator, he is disabled from devoting to charitable purposes more than one-fourth (and by the act of 1860, one-half) of his estate. But we think that the two months clause was intended to protect, not only them, but all the heirs and kindred of the testator, and even the testator himself, against the influences which might be brought to bear upon him in his last moments, and the mistaken notions which might govern him, and, to use the language of the opinion of the surrogate, " his inconsiderate acts during the brief interval when he would be more impressible to the idea of charitable donation as a means of tranquilizing

a disturbed conscience, in apprehension of a speedy dissolution."

Many cases may occur where devises and bequests, which are free from all imputation of imposition or undue influence, mistaken notions of religion, improvidence, vanity, weakness, or any of the evils at which it is said that the statute was aimed, may be made to worthy and useful religious bodies and charitable institutions, and yet be invalidated solely by the circumstance of their having been made within the prescribed time. When such instances occur, it is greatly to be regretted that the pious and benevolent intentions of the testator should be frustrated, and that the intended recipients should be deprived of the benefit of his bounty. But it is beyond the power of human wisdom to frame a general law of this description which may not in some cases so operate as to inflict hardship.

A separate point is made by the appellant, "The Baptist Missionary Convention of the State of New York." That appellant is not organized under the act of 1848, but under a special charter, and claims that it is not subject to the provisions of section 6 of that act. Its charter has been several times renewed, and the last renewal was by chapter 41 of the Laws of 1862. Its charter contains no restriction upon its right to take by devise or bequest, or upon the power of testators to devise or bequeath to it, except the following: "The corporation shall have authority to take and hold by gift, bequest, devise or grant, any real or personal property subject to the provisions of law relating to bequests and devises to religious societies, and to use and dispose of the same." (Laws of 1862, chap. 41, § 2.)

The appellant concedes that this section subjects it to the provisions of the act of 1860 (Laws of 1860, chap. 360), because that act in terms names "religious" societies, and prohibits any person having a husband, wife, child or parent, from devising or bequeathing to any such society more than one-half of its estate, but it contends that the act of 1848 does not mention religious societies, but only "benevolent, charitable, scien

tific and missionary societies," and treats of devises and bequests to them — that "religious societies" *per se* and *eo nomine* are recognized by our statutes as something separate and distinct from any or either of those named in the act of 1848 (even missionary societies), and that the clause in its charter subjecting it to the provisions of law relating to bequests and devises to "religious societies," is not sufficient to subject it to section 6 of the Laws of 1848.

We concur with the General Term in holding that a missionary society is a religious society, and are of opinion that the clause subjecting the appellant to the provisions of law relating to devises and bequests to religious societies, is sufficient to extend to it all provisions on the subject relating to any kind of religious society, and that consequently section 6 of the act of 1848, must on the authority of *Kerr* v. *Dougherty* (79 N. Y. 327) and *Lefevre* v. *Lefevre* (59 id. 434), be held to apply to the bequest to this last-named appellant.

The judgment of the General Term should be affirmed, with costs to the respondents, the executors, and the next of kin to be paid out of the estate.

.All concur.

Judgment affirmed.