**⁹ Dec. 176 WILLS—BEQUEST TO EDUCATIONAL INSTITUTION.**

[Pickaway Circuit Court, April Term, 1895.]

Clark, Cherrington and Russell, JJ.

†HENRY P. FOLSOM ET AL. v. JOHN G. HAAS ET AL.

DEVISE OF PROPERTY IN A WILL EXECUTED WITHIN A YEAR OF TESTATOR'S DEATH.

H. F. P., a resident of Ohio, died October 27, 1891, leaving a last will and testament and three codicils, executed less than a year before his death. He devised and bequeathed to his widow one-half of the net income of his real estate in Ohio, for her life, and the other half he devised and bequeathed to his only issue, an unmarried daughter, for her life. The remainder in said real estate he devised and bequeathed to the Ohio State university in fee, an educational institution belonging to the state of Ohio. If his daughter died before his wife, her one-half of the net rents are to go to the said university, so long as his wife lived. If said charitable devise and bequest should fail, or be held void for any cause, then said remainder was to go in fee simple to his brother's children. In a codicil, he said his object and intention by the devise and bequest to his brother's children was, in case he died within a year from the date of his will, and the consequent failure of the devise and bequest to the university, said children should take, but not that they should have the property in any other event. He then authorized and empowered his only daughter and issue to ratify and confirm the devise and bequest to the university, in case of his death within a year, and requested her to do so. About forty days after his death, the daughter, by an instrument duly executed, confirmed said devise in so far as she was able. The daughter died intestate, unmarried and without issue, August 4, 1893. Said will further provided if the devise and bequest to the university should be held void for any other reason than his death within a year, then he gave the property to the state of Ohio. "I have no doubt, in that event, that the legislature would donate said property to said University." *Held:*

1. Said devise and bequest to the university was void and never took effect.
2. Said testator had not the power to devise and bequeath said property to said university in a will executed within a year of his death, nor had said university the power to take said property under said will.
3. Said devise and bequest to the university was in contravention of section 5915, and section 20, of the Revised Statutes, and it failed, for the reason that said testator died within the year.

---

* This case was dismissed by the Supreme Court April 19, 1898, for want of preparation, 5 Legal News, 216. It is cited with approval in Davis v. Hutchins, 6 Dec., 371, 374.

4. The authority given his only daughter to ratify and confirm said devise and bequest to the university was a naked power, and equally within the condemnation of the statute. He could not authorize her to make valid his invalid devise and bequest, nor could he evade the plain meaning and intent of the statute by such an artifice.

5. The attempt of the daughter to ratify and confirm the invalid devise and bequest to the university, did not have the effect to revoke the devise to his brother's children; it did not amount to a compliance with his request; it only confirmed its infirmity.

6. The power to make wills is not an inherent right, but is governed entirely by statutory law. It may be regulated, limited or taken away entirely by the legislature.

7. The reason of the limitation placed upon the power of the testators, under section 5915, to devise or bequeath their property to religious, benevolent, educational, or charitable purposes, only in wills executed more than a year before their death, was founded upon a broad public policy; it was for the protection of the testators against the importunities of designing persons, and against themselves, as well as for the protection of their families, and the interest of the state.

APPEAL from the court of common pleas of Pickaway county.

RUSSELL, J.

This is an action brought by Henry P. Folsom, Clarence H. Folsom, Maria F. Thomas, Florine Folsom, Sumner Folsom, Charles J. Folsom and Ellen Gili, plaintiffs, only children of George and Charles Folsom, against John G. Haas and Daniel Haas, executors and trustees of Henry F. Page, deceased, and the board of trustees of the Ohio State university, defendants. The testator had his name changed from Henry Folsom, to Henry Folsom Page, by decree of court, many years ago.

The petition alleges that Henry F. Page was the owner in fee simple of about 960 acres of land in Pickaway county, Ohio. That he died intestate, on the 27th day of October, 1891, resident in said county and state, leaving Charlotte G. Page as his widow, and Isabel Page, his only daughter, unmarried, and of the age of about 39 years.

That said Page in his lifetime and in less than a year from his death, executed the following will and codicils thereto, which were duly probated and admitted to record in the probate court of said county, on the 6th day of November, 1891. It is said the will was written by the testator.

COPY OF WILL OF HENRY F. PAGE, DECEASED.

I, HENRY F. PAGE, *late of the city of New York, but at this date at Circleville, Ohio, do make and publish this instrument as my last will and testament :*

I. I direct that all my just debts shall be paid.

II. I give to my wife the use of the dwelling house in Circleville, Ohio, now occupied by me, and of the lot on which the same stands, during her lifetime. I give her all my household furniture, books and pictures, absolutely.

III. I give her one-half of the income of all my property, real and personal, in Ohio and Illinois, during her lifetime, after deducting taxes, assessments and necessary expenses of managing said property.

The bequests to my wife in the preceding clauses are in lieu of her dower or interest in all my real estate, and of her share or interest in all of my personal estate or property of every kind. If said bequests are not accepted as such provision in lieu of her dower and share of my personal estate, then they are to be void.

IV. I give and devise to my daughter, Isabel, all of my property of every kind and description, and wheresoever situated, during her lifetime, subject to the said provision in favor of my wife.

V. I give and devise to the Ohio State university, to be invested as the endowment fund, in fee simple and absolutely, all the residue, rest and remainder of my real estate and personal property in Ohio, Illinois or elsewhere. This devise shall include lands or personal property acquired hereinafter, or acquired under item 7.

VI.   If the devise and bequests contained in the last clause shall fail, or be held void for any cause, then I give and devise the real and personal estate described in said clause, number five (5), to the children or legal representatives of my brother, Charles Folsom, and of George Folsom, deceased, in fee simple and absolutely.

VII.   By the words "rest and residue and remainder," in clause five, is meant all my real and personal property, subject to the life estate and interest given to my wife and daughter.

I direct my executor or executors to invest all the money that may be due me at my decease in good farms in Ohio, which lands shall be subject to items 4 and 5 of this will.   I appoint John G. Haas and Daniel Haas as my executors.

HENRY F. PAGE.

*Whereas, I,* HENRY F. PAGE, *of Pickaway county, Ohio, made my last will and testament on or about the 15th day of May, 1891, I now declare the following to be a codicil to the same:*

I.   I confirm the said will in all respects, except so far as the same may be modified by this instrument.

II.   The object and intention of the devise in my will to the children of George Folsom, deceased, and to the children of Charles Folsom, was that in case of my death within a year from the date of my will, and the consequent failure of the bequest and devise to the Ohio State university, the said children should take the property, but not that they should have the same in any other event.

I now provide and declare that my said daughter is fully authorized and empowered to ratify and confirm said devise and bequest to the university, in case of my death within a year from the date of said will, and she is desired and requested by me to do so.

In case she complies with this request, the devises and bequests to the said children of George Folsom and Charles Folsom are hereby revoked.

III.   If the devise and bequest to the said university should be held to be invalid, from any other cause than my death within the said year, then, and in that event, I give and devise the whole of my estate absolutely to the state of Ohio, subject to the provisions of my will in favor of my wife and daughter.   I have no doubt the state would in that event donate the said property to said university.

IV.   If my daughter should die before her mother, I intend that the one-half of the income of said property, given to her in the said will, shall go, and I hereby devise the same to the said university so long as my wife lives.

V.   I wish my executors to collect the money as soon as possible, and pay for the farm bought of J. H. Roads.

VI.   I appoint said John G. Haas and Daniel Haas trustees, to rent all my lands in Ohio and Illinois during the lives of my wife and daughter, to make the necessary repairs on the same, and to pay the proceeds of the rents and profits, after deducting all necessary expenses, to the parties entitled to the same under this will.   In testimony whereof, I have hereunto set my hand, this 6th day of July, 1891.

HENRY F. PAGE.

I make and publish this instrument of writing as a codicil to my will, which is dated May 5, 1891, hereby ratifying and confirming said will and a former codicil which I made to said will.

*Item* 1.   I authorize and empower my daughter, Isabel, to sell and convey by deed in fee simple, all my right, title and interest in the premises on West Main street, in Circleville, Ohio, known as the Masonic Block, both that cut which at one time belonged to Henry Sage, deceased, and the undivided half of the third story of said building; also, to sell and convey in fee simple by deed the premises on East Main street, in said city, which I purchased of Martha Jacob, being my dwelling-house and the lot belonging thereto, and I authorize

her to sell and convey said premises, or either of them, upon such terms as she: pleases, and to use and dispose of the proceeds as she pleases.

*Item* 2. But she is not to sell and convey said dwelling-house in the lifetime· of her mother without her consent. If said property in item 1 is not so sold and. conveyed, this codicil to be void. In witness whereof, I have hereunto set my· hand this 6th day of August, 1891.

HENRY F. PAGE.

Whereas, on the 5th day of May, 1891, I made and published my last will and testament, and since then made and published several codicils to the same, I now, on this 4th day of September, 1891, make and publish this instrument as· another codicil to said will.

*Item First.* I authorize and empower my said executors, or either of them: who may qualify, to sell and convey in fee simple, for cash or on credit, any of my real estate, in case they, or he, deem it necessary in order to pay any debts or legal claims against my estate. I authorize them, or him, if only one of· them. qualifies, to settle and compromise any claim of my estate against any person and any legal claim against my estate.                            :

*Item Second.* If my daughter Isabel should refuse to accept the bequests. and devises contained in my will or in the codicils thereto, and should make any attempt to set aside and vacate said will or any of the provisions contained in said will, then and in that case I hereby revoke all the bequests and devises heretofore made to her, and all powers to sell; and·I hereby give and devise to· her in fee simple all my land in Champaign county, Illinois.

*Item Third.* And in the event mentioned in the last item occurring, I give and devise all the rest and residue of my estate of every kind and description (except the said Illinois land) to the children of my brother Charles, and to· Charles Folsom, son of George Folsom, deceased; the said devisees are to pay to Ellen Gill, sister of said Charles, five hundred dollars a year during her life. But this item is subject to the provisions in my will in favor of my wife. In testimony whereof, I have hereunto set my hand this 14th day of September, A. D. 1891.

HENRY F. PAGE.

That said widow duly elected to take under the will, and said daughter did not refuse to accept the bequests and devises contained in said will and codicils,. and did not make any attempt to set aside or vacate, and that they thereby became and were concluded by the terms and provisions thereof. That Isabel Page did, on the 5th day of December, 1891, execute and deliver to the board of trustees of the Ohio State university, its successors and assigns,·a pretended instrument of ratification and confirmation of said devise and bequest, as follows:

DEED OF CONFIRMATION OF ISABEL PAGE.

*Know all men by these presents:* That, whereas, Henry F. Page, late of the· city of Circleville, in the county of Pickaway and state of Ohio, made and executed his last will and testament and the codicils thereto, at the times respectively therein stated, which are in the words and figures following, to wit:

*And, whereas,* the said testator died on the 27th day of October, A. D. 1891; and, whereas, the said will and codicil were on the 6th day of November, A. D. 1891, duly admitted to probate by the probate judge of said county, and duly recorded, together with the testimony of the witnesses to said will and to said codi- · cils, in the records of wills in said county.

*Now, therefore,* I, the said Isabel Page, daughter and the only issue of the· said Henry F. Page, the said testator, in execution of the authority and power conferred upon and vested in me by said testator in and by the first of said codicils, to ratify and confirm the said devise and bequest to the Ohio State university contained in said will and the said first codicil, and in consideration of the· premises and of the sum of one dollar to me paid by the board of trustees of

the Ohio State university, the receipt whereof is hereby acknowledged, do hereby ratify and confirm said devise and bequest to the said Ohio State university, and do hereby convey unto 'the board of trustees of the Ohio State university and the successors and assigns of said board forever, in trust for the use and benefit of said university to be invested as the endowment fund, all the property, real and personal, devised and bequeathed by said testator to the said Ohio State university in and by his said will and codicils, the same being all the residue, rest and remainder of the real estate and personal property in Ohio or elsewhere, of which said testator died seized, and of any and all lands or personal property which has been or may be acquired under and pursuant to item seven, of said will, subject to the life estate and interests in said real estate and personal property given by said testator in and by his said will and codicils to his wife and to me, and subject also to my power to sell and convey in fee simple the real estate described in the second codicil to said will and to dispose of the proceeds as I may see fit.

*To have and to hold* the said property hereby conveyed, subject to said life estates and interests and powers above described, with all the privileges and appurtenances thereunto belonging unto the board of trustees of the Ohio State university, and the successors and assigns of said board forever, in trust for the uses and benefit of said university, to be invested as the endowment fund.

*In witness whereof,* I, Isabel Page, an unmarried person, have hereunto set my hand and seal this 5th day of December. A. D. 1891.

[ SEAL.] ISABEL PAGE.

(Duly executed before a Notary.)

Isabel Page died intestate, unmarried, and without issue, August 4, 1893, domiciled in Pickaway county, Ohio, leaving her mother surviving her as her only heir at law. That the Ohio State university was, and is, an educational institution, situate at Columbus, Ohio, wholly under the control of said state.

Plaintiffs claim that because of the death of the testator within a year from the execution of said will, the charitable devise and bequest was invalid and never took effect; that the title in remainder in said premises upon the death of said testator, vested immediately in them, subject only to the life estate of the daughter and the right to the one-half of the net rents and profits given his wife; that the pretended power and trust given Isabel to ratify and confirm said devise and bequest to the university was also void; that said original devise and the pretended power to ratify and confirm, were made for the purpose of evading the laws and policy of the state of Ohio. That said instrument of confirmation and ratification, was made by Isabel Page, and received by said board of trustees with the same intention and purpose, and also to defeat the plaintiffs in their title and ownership of said premises, and of the one-half of the net rents accruing since the death of Isabel Page.

Plaintiffs say that said pretended deed of confirmation is a cloud upon their title, and ought to be set aside, declared null and void, and be cancelled under the direction of the court, and they ask to have their title to said premises quieted, and for all proper relief.

The real facts pleaded in the petition are not controverted by the defendants, the university, only the legal effect is denied.

The board of trustees, in their answer, deny that the devise to it is invalid; that the deed of confirmation is invalid, and they claim to be the owners in fee simple in the remainder subject only to the life estate of Charlotte G. Page, in the one-half of the net rents and profits, and also that they are entitled to have paid to them by John G. Haas and Daniel Haas, trustees of the Page estate, the one-half of the net rents accruing since the death of Isabel Page, August 4, 1893. They allege that said daughter Isabel complied with the request of her father, to ratify and confirm, all of which is denied by the plaintiffs in their reply.

The executors and trustees of the will of Henry F. Page file an answer and say, that they are unadvised and in doubt as to whether, by the terms of said will

one-half of the rents, issues and profits of said lands, which were payable to Isabel Page during her lifetime, are, from and after her death, to be paid to said plaintiffs, or to the defendants, the board of trustees of the Ohio State university, and they can not safely proceed to pay said half of said rents, etc., to the plaintiffs, or to said board of trustees, without instructions of the court, as to their duties.

The principal questions involved in this case, depend upon the construction of sections 20 and 5915 of the Revised Statutes, taken in connection with paragraph 2 of the first codicil.

Section 20 makes such institutions as the university capable of taking where not in contravention of section 5915.

Section 5915 is as follows:

" If any testator die leaving issue of his body, or an adopted child, living, or the legal representative of either, and the will of such testator give, devise or bequeath the estate of such testator, or any part thereof, to any benevolent, religious, or educational or charitable purpose, or to this state, or to any other state or country, or to any county, city, village, or other corporation or association in this or any other state or country, or to any person in trust for any such purposes, or municipalities, corporations, or associations, whether such trust appears on the face of the instrument making such gift, devise or bequest or not ; such will as to such gift, devise, or bequest, shall be invalid, unless such will shall have been executed according to law, at least one year prior to the decease of such testator."

In this case, it is admitted that the testator did die within a year from the execution of his will, in which he had made a charitable devise and bequest. It is admitted that he left issue surviving him ; therefore, it is claimed the devise and bequest to the university comes directly within the prohibition.

The right to make a will is governed by statutory law ; it is not a common law or inalienable right.

It may be limited or regulated in any manner the legislature sees fit, or taken away altogether. *Patton* v. *Patton*, 39 Ohio St., 598 ; *Brettum* v. *Fox*, 100 Mass., 234.

When the legislature has once prescribed the mode in which testators may exercise the power of making wills, they must follow it in every respect. Southerland on Statutory Construction, section 455 ; Sedgwick on Const. and Stat. Const., page 323n.

Our statute limits the right to make a will to persons of full age and sound mind. No one would claim that if a person made a will during minority, it would be valid upon his attaining his majority, without republication. Neither could an idiot make a will which would be valid upon his recovery. It has been held where a testatrix, having no child, made a will, afterwards had a living child, which she survived, the birth of the child revoked the will, and it was not revived by her surviving the child. 9 Ohio St., 382, *Ash* v. *Ash*

Section 5915 and section 20, of the statutes, must be construed together in order to get the full intention of the legislature. They are very wise provisions —they are a step toward adopting the English Mortmain Statutes. There must be a limit to giving to charitable, educational and benevolent institutions. Judge STORY well says in speaking of the English Mortmain Acts: 2 Story Eq. Jur., section 1194.

"It deserves the consideration of every wise and enlightened American legislature, whether provisions similiar to those of this celebrated statute, are not proper to be enacted in this country, with a view to prevent undue influence and imposition upon pious and feeble minds in their last moments, and to check an unfortunate propensity (which is sometimes found to exist under a bigoted fanaticism) the desire to acquire fame as a religious devotee and benefactor, at the expense of all the natural claims of blood and parental duty."

The legislature should be, and no doubt was influenced and controlled by considerations of public policy, as well as individual interests, in passing the above sections of the statutes. Such restrictions are based on grounds of public

policy. They are to protect testators against themselves in their last moments, as well as against designing persons. It was not limited to the protection of the persons named in the statute.

These views dispose of another contention—that the estate devised to the university was merely voidable at the option of Isabel Page, and not absolutely void. We think the meaning of "invalid" in section 5915 is, "absolutely void" as to the whole world. This same contention was made in *Patton* v. *Patton*, and the case of *Burgett* v. *Burgett*, 1 Ohio, 469, and similar cases were cited in support; but the court took the view that it was "void and never took effect;" and was not voidable at the option of the lineal heir. *Harris* v. *Slaight*, 46 Barb., 470, affirmed in 2 Abb. N. C., 316; 92 N. Y., 433, 444; *Stevenson* v. *Short.*

Indeed, if charitable devises in contravention of this section were merely voidable at the election of the person named in the statute, it might require years until minors arrived at majority, before it would be known whether the devise would be avoided or not. Then again, some of the only issue might elect to treat it as absolutely void, and others desire to confirm. Such a view of the law would work great inconvenience, and unsettle the title to lands, which is always to be avoided.

Let us examine the will itself:

Item 6 is as follows: "If the devise and bequest contained in the last clause (devise to the university) shall fail or be held void for any cause, then I give and devise the real and personal estate described in said clause number five (5) to the children and legal representatives of my brother, Charles Folsom, and of George Folsom, deceased, in fee simple and absolutely."

Thus far there is no question when the property would go, he having died within the year leaving issue; it would go to the Folsoms, and the devise and bequest to the university would be absolutely void. This is admitted on both sides, and recognized by the testator himself.

Item 1 of the first codicil is as follows:

"1. I confirm the said will in all respects, except so far as the same may be modified by this instrument."

Neither would this change the devise to the Folsoms, but would confirm it.

Item 2 of the first codicil is as follows:

"2. The object and intention of the devise in my will to the children of George Folsom, deceased, and the children of Charles Folsom, was, that in case of my death within a year from the date of my will, and, the consequent failure of the bequest and devise to the Ohio State university, the said children should take the property, but not that they should have the same in any other event. I now provide and declare that my said daughter is fully authorized and empowered to ratify and confirm said devise and bequest to the said university in case of my death within a year from the date of said will, and she is desired and requested by me to do so. In case she complies with this request the devise and bequests to the said children of George and Charles Folsom are hereby revoked."

What effect has this codicil? Counsel for the university claim:

*First*—That the plaintiffs, who are nephews and nieces of the testator, are not his heirs, and would not inherit from him in case of his intestacy. That section 5915 was enacted solely for the benefit of the persons named therein, in this case for the sole benefit, of the only issue and heir, Isabel Page.

*Second*—That it never was the intention of the testator to devise anything unconditionally to the plaintiffs.

*Third*—The only heir having complied with the request of the testator to confirm the devise and bequest to the university, mentioned in the second item of the first codicil, the provision in favor of the Folsom children was thereby revoked, and they would not take anything.

The property would pass by inheritance to the lineal heir, Isabel Page.

*Fourth*—That the daughter being the only heir and issue, she was competent to pass the title to the university, and if the power given to her to ratify

was invalid and she did not thereby confirm, yet, she having done all she could to comply with the testator's request, the condition upon which he revoked the devise to the Folsom children was fulfilled, and it stood revoked; that if she did not convey it under the deed, the title still remains in her heirs. The defendants, however, maintain the language of the deed of confirmation is broad enough to convey the title which thus descends to her.

On the other hand, the plaintiffs say the true construction of the will is, that upon the failure of the devise and bequest to the university because of the death of the testator within a year, the property passes directly to them. If he could not dispose of it to a charity by will executed within a year from his death, he could not by will give his daughter the power to do so. That he could not do indirectly through another what he was prohibited from doing himself.

In the first codicil the testator recognizes the one event upon the happening of which the Folsom children could take, viz., his death within a year leaving issue. It did happen.

But the university says, whether he had the power or not to give his daughter the authority to ratify and confirm his devise, yet she having done all she could to comply with his request, the provision in favor of the Folsoms is revoked, and the property is left undisposed of, and she took it as his heir. Therefore the whole question depends upon the power or authority given Isabel.

What is the nature of this power?

The general rule is, if a person has a power given him by another to perform an act, the validity of the performance depends upon the instrument creating such power.

In some instances the power is connected with an interest in the property over which it is to be exercised, but in this case Isabel did not have any property granted to her in the first codicil. Her life estate did not add to the power given. Her power was to be exercised over the fee in remainder, and over nothing else.

Plaintiffs and the university, in their pleadings, recognize it as a "power and trust." Plaintiffs contend that whether the authority to affirm amounted to a precatory trust or was a naked power, in either event it is void. Counsel for the university contend that the validity of the provisions in favor of the university depends upon the question whether the authority given Isabel Page is a naked power or a precatory trust; if the former, it is valid, and does not come within the condemnation of the statute; if the latter, they admit it is void. We think the will is plain that the testator did not intend to give Isabel an interest in the remainder whether she did or did not ratify. We think the right to confirm was not a precatory trust, but was beyond doubt a naked power.

Section 5915 says, "such *gift*, *devise* or *bequest* shall be invalid," etc.; the language is certainly broad enough to include a naked power. Testators are not in so many words authorized by section 5914 to create by will, a power or trust, yet nothing is better settled than that they may do so.

The definition of the term power, is "an authority to do some act in relation to lands or the creation of estates therein, or charges thereon, which the owner granting or reserving such power, might himself lawfully perform." 2 Wash. R. P., top page, book 2, Ch. 6, sec. 28; Bouv. L. Dic., vol. 2, page 337 (Ed. 1743). In 2 Wash. R. P., 320, it is said: "The estates raised by the execution of a power, whether it be created by will or deed, take effect as if limited in the instrument creating the power." 1 Sugden on Powers (Ed., 1856), 242. Also in 2 Wash. R. P., top page 638, it is said: "When one takes an estate by execution of a power, it is to all intents, as if he took by the deed which created the power, and his conveyance had been inserted in that, instead of coming to him immediately through the one holding the power, and the test of the estate raised by appointment, is to place them in the deed creating the power in lieu of the power itself."

"The appointer is merely an instrument, the appointee is in by the original deed." 2 Wash. R. P., 320 (Ed. 1862); 4 Kent Com., page 328, star page. The appointer in this case is Isabel Page, the appointee, the university. It is further said (*Id.*, 320, and cases cited):

"The appointee takes in the same manner as if his name had been inserted in the power, or, as if the power and the instrument executing the power had been expressed in that giving the power. He does not take from the donee of the power as his assignee."

Therefore, it follows, if Isabel Page had the power, she was simply the instrument of the testator, through whom he acted. As we have seen, the university takes, if at all, by virtue of the devise and bequest to it in the original will, and not from Isabel Page, the donee of the power.

In this case, the testator gave to Isabel Page a naked power not coupled with any interest.

Could he grant to another a power to do what he could not do himself? "*Nemo potest facere per obliquum quod non potest facere per directum.*" His power to devise it to the university is gone, because he dies within the year; he cannot give to another what he has not himself. He cannot evade the plain provisions of the statute, by delegating a power to another to do what he himself is prohibited from doing. We think the power of the testator to devise to the university was not less potent than the power of Isabel Page to confirm it; if the law prohibits the testator from devising to a charity, it certainly prohibits another through his power from doing the same thing. As has been well said, her confirmation of the void devise only confirmed its infirmity. 1 Devlin on Deeds, sec. 17.

"A confirmation doth not strengthen a void estate, for a confirmation may make a voidable or defeasible estate good, but it cannot work upon an estate that is void in law." Coke Lit., sec. 515, chapter 9, note, Lib. 3. "A confirmation is an approbation of, or assent to an estate already created by which the confirmor strengthens and gives validity to it as far as it is in his power. It has this operation only with respect to estates voidable, or defeasible; but it has no operation upon estates which are absolutely void." Gilb. Ten., 75, Coke Lit. Lib., 3, chap. 9, sec. 515, note 1.

It will be seen from the above authorities, that the confirmation must act upon an estate in *esse*, and cannot have any effect upon an absolutely void estate.

It is said, that notwithstanding the power to Isabel is void, yet her act under that power, she being the only heir, had the effect to revoke the provision in favor of the plaintiffs—that although the attempt to ratify is void, the former provision in their favor is revoked, and he dies intestate as to the remainder.

The testator meant a valid, legal, effectual confirmation; in fact, one that would vest in the university a good title. It does not mean an attempt, or willingness to confirm. In our opinion his request to confirm meant nothing short of an actual legal confirmation which vested the title in the university. The naked power in the only issue amounts to no more than a naked power in a stranger. No authority or reason is advanced by the defense in support of their argument to the contrary, and we have not been able to find any ourselves. In determining this question, we must look to the intention of the testator as expressed in the whole will.

It was the evident intention that the Folsom heirs should have the property if not legally disposed of to the university. If this had not been his intention, he need not have said in his first codicil "In case she complies with this request, the devises and bequests to the said children of George Folsom and Charles Folsom are hereby revoked." It appears from the whole will, that the Pole Star of his intentions was to dispose of this remainder to the university. If he could not effectually do that, there was one other place he desired it to go, viz to the children of his brother.

In the first codicil he says: "I confirm the said will in all respects, except so far as the same may be modified by this instrument."

In his second codicil he says; "Hereby ratifying and confirming said will and a former codicil which I made to said will." His evident intention was to give the property to the university if he could do so legally; and if not, it was to go to the plaintiffs, but in no event did he intend to die intestate as to any of his property, and in no event did he intend his daughter should have the remainder in fee, simple. The presumption is, he did not intend to die intestate as to any of his property, and the will ought to be so construed.

He studiously provides against such a contingency, and indeed his great anxiety not to die intestate, is one of the noticeable features of this very remarkable will.

His intention was:

*First*—To give the remainder to the university.

*Second*—If he could not give it to them legally, it was to go to the Folsoms.

In legal contemplation, his intention went no farther than to the acts he could legally perform.

The case of *Patton* v. *Patton*, 39 Ohio St., 598, is the first and only case construing section 5915 in the supreme court of Ohio. Many of the claims contended for in this case by defendants, were contended for in that.

The court in that case says: "Such void bequest never takes effect, and if no other disposition be made of the property in the will, it descends to the heir immediately upon the death of the testator." In this case there was another disposition of the property in the will, viz: to the Folsoms, and the benefit from the statute will therefore accrue to them.

The testator knew he could not devise the property directly to the university if he died within a year, therefore he sought another plan viz: to do the same thing through another.

He could not do this, for powers are in the nature somewhat of agencies. The power of the agent is not higher than that of the principal. Powers may be given in wills to extend beyond the death of the testator, but they must be to do such acts as the testator could himself directly provide for in his will.

It is said by counsel for the university that the plaintiffs took nothing under the will unconditionally. The condition upon which the plaintiffs took was the death of the testator within a year; this he performed himself. It was the same condition, the happening of which made the devise to the university void.

The estate vested in the Folsoms immediately upon the death of the testator. 33 Ohio St. 134, *Linton* v. *Lacock;* Hawkins on Wills, 237.

"It is the duty of the judge to make such construction as shall suppress all evasions for the continuance of the mischief (*a*). To carry out effectually the object of a statute, it must be so construed as to defeat all attempts to do or avoid in an indirect or circuitous manner, that which it has prohibited or enjoined (*b*). In *fraudem legis facit, qui, salvis verbis legis, sententiam ejus circumvent* (*c*); and a statute is understood as extending to all such circumventions, and rendering them unavailing. *Quando aliquid prohibetur, prohibeter et omne per quod devenitur ad illud* (*a*).

When the acts of the parties are adopted for the purpose of effecting a thing which is prohibited, and the thing prohibited is in consequence effected, the parties have done that which they have purposely caused, though they may have done it indirectly (*b*).

When the thing done is substantially that which was prohibited, it falls within the act, simply because, according to the true construction of the statute, it is the thing thereby prohibited (*c*).

Whenever courts see such attempts at concealment, "they brush away the cobweb varnish," and show the transaction in its true light (*d*).

They see things as ordinary men do (*e*), and see through them. Whatever might be the form or color of the transaction, the law looks to the substance of it

(f). Endlich on Interpretation of Statutes, sections 138 and 140; *Strechlan* v. *Albridge*, 9 Vs., Jr., 516; *Duke of Marlborough* v. *Earl Goddolphin*, 1 Eden Rep., 417.

Let us bear in mind one thing, that section 5915 was not enacted to aid the testator in carrying out his charitable intent, but was enacted to thwart such intention. One rule in regard to the construction of statutes applicable to this case is now well settled in this state. The rule is, that it is not allowable to interpret what has no need of interpretation. "Where the words of a statute are plain, explicit and unequivocal, a court is not warranted in departing from their obvious meaning, although from considerations arising outside of the language of the statutes it may be convinced that the legislature intended to enact something different from what it did in fact enact." *Woodbury* v. *Berry*, 18 Ohio St., 456; Sedgwick on Statutory Construction, 231, also section 714; *Wilcox* v. *Nolz*, 34 Ohio St., 523; Dwarris, 582-3; *Gardner* v. *Collins*, 2 Peters, 93.

After examining section 5915 carefully, also the different constructions claimed, we are of opinion that the language is so clear and explicit, and the intention as expressed so plain and unequivocal, that nothing could be added to make it plainer; it means just what it says. To give it any other construction would be a piece of judicial legislation, of which this court is unwilling to bear the responsibility.

We are therefore of the opinion that the devise and bequest to the university failed because of the death of the testator within the year, and that the power given Isabel Page to confirm, was also invalid. It follows that the plaintiffs have a right to a decree as prayed for, and that the trustees of Henry F. Page shall pay the one-half of the net rents accruing since the death of Isabel to the Folsom heirs, and one-half thereof to the widow.

We have given to this case a very careful consideration; in doing so we were greatly aided by the arguments and exhaustive briefs of the eminent counsel on both sides.

*Booth & Keating*, *Thomas Millikin*, and *Henry P. Folsom*, for Plaintiffs.

*Harrison, Olds & Henderson*, Attorneys for Ohio State University.

*L. T. Neal*, for J. G. Haas and Daniel Haas, Executors and Trustees under the will of H. F. Page.